442 A.2d 1179

**In the Matter of MARK T., a Minor.**

**Appeal of CARRIE T.**

Superior Court of Pennsylvania.

Argued Oct. 20, 1981.

Filed March 19, 1982.

Garry Wamser, Lock Haven, for appellant.

Larry Coploff, Lock Haven, for participating party.

Before BECK, WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in finding her minor son "dependent" as defined in the Juvenile Act.[1] We agree and, accordingly, vacate the orders of the lower court and remand for proceedings consistent with this opinion.

Mark, the subject of this appeal, was born to appellant and her husband, on May 19, 1972. Following his parent's divorce, Mark remained in the custody of appellant in Pennsylvania, while his father settled in Florida. After a pattern of unexcused absences from school, the Clinton County Children and Youth Social Services Agency (CYS) filed a petition on October 6, 1980, alleging that Mark was without proper parental care or control and requesting that he be adjudicated dependent. The lower court held a series of hearings and found that although Mark's physical needs were being adequately met and a close mother-son relationship had developed, appellant's bizarre behavior[2] could very well have serious long-range detrimental effects upon Mark and declared him dependent. A disposition hearing was held, 42 Pa.C.S.A. § 6351, and the lower court awarded custody to CYS.[3] This appeal followed.

■ A "dependent child" is defined under the Juvenile Act as a child "without proper parental care or control, subsistence, education as required by law, or other care or control

1. Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 6301 et seq.

2. Dr. Richard R. Mays of the Divine Providence Community Medical Health Center described appellant's condition as schizophrenia that is no longer in remission.

3. In an independent action, the lower court subsequently awarded the father custody of the child. That award is not before this Court, and we express no opinion on its propriety.

necessary for his physical, mental or emotional health or morals...." 42 Pa.C.S.A. § 6302. "The question 'Is the child without proper parental care or control?', includes two questions: 'Is the child *at this moment* without proper parental care or control?', and if so, 'Is such care or control *immediately available?*'." *In the Interest of LaRue*, 244 Pa.Superior Ct. 218, 233, 366 A.2d 1271, 1278 (1976). *Accord In the Interest of Theresa E.*, 287 Pa.Superior Ct. 162, 178, 429 A.2d 1150, 1158 (1981); *In the Interest of Black*, 273 Pa.Superior Ct. 536, 543, 417 A.2d 1178, 1182 (1980). A finding of dependency must be supported by evidence that is clear and convincing. 42 Pa.C.S.A. § 6341(c); *In the Interest of Pernishek*, 268 Pa.Superior Ct. 447, 457, 408 A.2d 872, 877 (1979).

The lower court relied solely upon evidence relating to Mark's relationship with appellant in adjudicating him dependent. We find such evidence by itself insufficient to support a finding of dependency. Assuming, *arguendo*, that the lower court correctly found Mark was without proper parental control at the time of the hearing, he could *"not be adjudicated dependent unless* there [was] clear and convincing evidence that *such care [was] not immediately available."* In *re: A.E.M.*, 288 Pa.Superior Ct. 284, 288, 431 A.2d 1049, 1052 (1981) (emphasis added). To make such an adjudication, the lower court was required to determine whether Mark's father was capable of rendering the requisite care and control for the child—a determination which cannot be made on the record before us. The lower court did not consider the availability of the father before adjudicating the child dependent, despite the express purpose of the Juvenile Act to provide care and protection for children "in a family environment whenever possible, separating the child from parents only when necessary for his welfare or in the interests of public safety." 42 Pa.C.S.A. § 6301(b)(3). *See also In the Interest of Pernishek, supra; In the Interest of LaRue, supra.* Accordingly, because the record is insufficient, we must vacate the orders of the lower court and remand the case for further proceedings. The lower court

shall direct an investigation of the father's home and consider the results of such an investigation before making its adjudication. "Additionally, the court should consider obtaining disinterested testimony from neighbors, social workers, and/or psychological experts before making its adjudication." *In re: A.E.M., supra,* 288 Pa.Super. at 289, 431 A.2d at 1052. After the hearing, the lower court shall enter an appropriate order and prepare an opinion with specific findings of fact. *Id.*

Orders vacated and case remanded for further proceedings consistent with this opinion.

BECK, J., files a concurring opinion.

BECK, Judge, concurring:

I concur and would vacate the order adjudicating Mark dependent pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.*

The lower court erred in finding Mark dependent. The state failed to meet its burden of persuasion by clear and convincing evidence that Mark was "without proper parental care or control" at the time of the hearing. 42 Pa.C.S.A. § 6302. On the basis of this conclusion alone, I would vacate the order.

In reviewing the evidence in this dependency proceeding, we are mindful that it "is a serious matter for the long arm of the state to reach into a home to snatch a child from its mother. It is a power which a government dedicated to freedom for the individual should exercise with extreme care, and only where the individual should exercise with extreme care, and only where the evidence clearly establishes its necessity." *Rinker Appeal,* 180 Pa.Super. 143, 148, 117 A.2d 780, 785 (1955).

Richard R. Mays, M.D., the psychiatrist who examined both Mark and his mother, testified that the mother exhibited symptoms generally associated with schizophrenic illness. This condition caused the mother to believe that unspecified persons were beaming radio and television signals at her through the walls of her apartment and using her electrical

appliances to launch electrical impulses and shocks at her. He further testified that Mark revealed "no effects," "no signs of emotional disturbance ... no overt symptomatology" as a result of his mother's condition. (N.T., pp. 21, 29.) Moreover, the psychiatrist stated that there was no danger that the mother would physically harm the child and that if the mother accepted medication and therapy, her symptoms might be remitted within a week or two. (N.T., pp. 20, 34.) He did add, however, that if the mother's condition persisted, there was a "moderate possibility" that the child would be psychologically damaged through continued exposure to her. (N.T., pp. 23, 24.)

The lower court found that the mother was "suffering from delusional formations, ideas of reference which were consistent with a schizophrenic illness that is no longer in remission." This condition, however, the court concluded, had had no harmful physical or psychological effects on the boy. The lower court's adjudication of dependency was based not on the present condition of the child, but on testimony of potential long range psychological harm to the child. Such testimony alone will not support a finding of dependency. This case is distinguishable from *In the Interest of Black*, 273 Pa.Super. 536, 417 A.2d 1178 (1980), where this Court upheld a lower court finding that where parental incapacity had resulted in the death of two prior children, and where that parental incapacity had not been corrected, there were adequate grounds for adjudicating dependent a new born child of the same parent, even though the parents had caused no harm to the new born child. In this case, there has been no testimony that the mother's condition has harmed Mark or anyone else. Nor was there testimony that her condition would cause harm to Mark in the future. Absent a finding that the parent's conduct or condition has caused actual harm to the child, testimony concerning hypothetical prospective psychological harms does not constitute clear and convincing evidence of lack of "proper parental care or control." *Matter of DeSavage*, 241 Pa.Super. 174, 185, 360 A.2d 237, 243 (1976).

In light of the fact that the evidence does not support the finding that Mark was without proper parental care or control, I conclude that it was not necessary for the lower court to reach the issue whether such care was immediately available from a non-custodial parent. However, since the majority has raised this issue, a few observations are in order.

This court has developed a two pronged test in dependency proceedings. A child may be adjudged dependent: (1) if the child is currently without proper parental care or control; and (2) if such care is not immediately available from a non-custodial parent.

The genesis of this formulation is *In the Interest of LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976). In *LaRue*, twin boys aged six months had been placed in foster care by their mother under an entrustment agreement with the Child Welfare Service ("Agency"). Four years later, the mother requested the Agency to return the children to her. The Agency refused, and initiated a dependency proceeding, alleging that the children were "deprived" within the meaning of the Juvenile Act. In such a situation, this Court held that the Juvenile Act required both a finding of lack of proper parental care and a finding that such parental care was not immediately available. *LaRue, supra*, 244 Pa.Super. at 1278, 1279, 366 A.2d 1271. The "immediately available parent" test thus originated in special circumstances. The state had already acquired de facto custody of the children and had been caring for them for some time. The children not in the custody of their parent could have been deemed automatically without proper *parental* care. The *LaRue* court found such a result to be inconsistent with the purposes of the Juvenile Act, one of which is to preserve the unity of the family. That court therefore ordered inquiry into whether the non-custodial parent, in this case the mother, was immediately available to provide care.

The two-pronged dependency test has properly been confined to circumstances where the state already has de facto custody of a child and has initiated a dependency action to

defeat attempts by a non-custodial parent to obtain the return of the child. *In the Interest of Black, supra; In the Interest of Pernishek,* 268 Pa.Super. 447, 408 A.2d 872 (1979); *In the Interest of Clouse,* 244 Pa.Super. 396, 368 A.2d 780, 785 (1976); *In the Interest of LaRue, supra.* Until today, no holding of this court has extended this test to other types of situations involving dependency petitions under the Juvenile Act. Moreover, this court has strongly disapproved the use of a dependency proceeding as a means of transferring custody of a child from one parent to another. *In Interest of Theresa, E.,* 287 Pa.Super. 162, 429 A.2d 1150 (1981).[1] Where as here, a non-custodial parent desires legal custody of a child in the de facto or legal custody of another parent, that parent must initiate a custody action.[2] The majority's endorsement of the two-pronged test in the instant case is therefore misplaced.

Moreover, if the two-pronged test were applied in the instant case, it would defeat an adjudication of dependency. The court would then have no statutory basis for a transfer of custody to the "immediately available" father. Under the Juvenile Act, the court has no authority to interfere with a child's custody absent an adjudication of dependency. If the court fails to find a child dependent, then it must dismiss the dependency petition and order the child discharged to the custodial parent. 42 Pa.C.S.A. § 6341.[3]

1. In point of fact, the father here correctly sought custody by bringing an independent custody action during the pendency of this appeal.

2. Section 6341, concerning adjudication of dependency petitions, states in pertinent part: "... If the court finds that the child is not a dependent child ... it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding."

3. The majority cites *In re A.E.M.,* 288 Pa.Super. 284, 431 A.2d 1049 (1981) as authority for its holding that where a dependency petition has been filed against a custodial parent, the court may not adjudicate a child dependent without a showing by clear and convincing evidence that no other parent is immediately available to provide the necessary care to the child. Although his proposition appears as *dicta* in *A.E.M.,* the case itself merely holds that a dependency court can make no disposition concerning a child until it has found the child dependent. *Id.,* at 1052.

Appellees contend that this appeal should be dismissed as moot, because the father obtained custody through a separate custody action while this appeal was pending. We disagree. The foundation of the mother's appeal is that the court erred in finding dependency based on a failure of "proper parental care or control." The issue of dependency, however, has not lost its significance. Should the mother seek to regain custody of her child, a record finding of dependency might prejudice her. Her appeal involves more than a purely abstract or academic question. See *Community Sports, Inc. v. Denver Ringsby Rockets, Inc.*, 429 Pa. 565, 240 A.2d 832 (1968).

I would vacate the order of dependency and would not remand for further hearing.[4]

___

4. This opinion in no way forecloses the mother from petitioning the court for a modification of its custody order of August 26, 1981.