543 A.2d 1192

**In the Interest of JUSTIN S. and Matthew S.**

**Appeal of MARY ANN F., Natural Mother of Justin S. and Matthew S.**

Superior Court of Pennsylvania.

Argued Dec. 8, 1987.

Filed May 31, 1988.

Richard M. Conte, Jeannette, for appellant.

Before ROWLEY, TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order of the Westmoreland County Court of Common Pleas awarding custody of the two minor children, Justin S. and Matthew S., to their natural father, Edward S. The appellant, Mary Ann F., is the children's natural mother and, prior to the court's decision, had custody of the children. We affirm the order of the court.

The appellant questions whether the lower court, in proceedings under the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq.*, and the Child Protective Services Law, 11 P.S. § 2201 *et seq.*, can make a disposition as to children which alters an existing custody arrangement without first adjudging the children to be dependent. The appellant further challenges whether the court can restrict her custody rights absent an

adjudication identifying her as the perpetrator of the child abuse.

The history of this case is unusual and a thorough review of the pertinent facts is warranted. The record reveals that, at the time of this action's inception, Justin S., born July 4, 1983, and his brother Matthew S., born March 8, 1981, resided with their natural mother, Mary Ann F. (formally Mary Ann S.), and their mother's paramour, Roy D. At the initiation of these proceedings, the children's natural parents were estranged and, during the course of this action, finalized their divorce. Mary Ann F. has since remarried. Her current husband is not associated with this appeal in any manner. Prior to this action, the children's natural father, Edward S., visited his sons on weekends. During one such visit, Edward S. allegedly physically abused Justin.

On March 24, 1986, after receiving a report of child abuse, the Westmoreland County Children's Bureau (hereinafter "WCCB") initiated this case by filing a petition pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.*, alleging physical abuse as defined by the Child Protective Services Law, 11 P.S. § 2201 *et seq.* (hereafter "CPSL"), of Justin S. by his natural father. The petition alleged "dependency and abuse" and requested a hearing to adjudicate and dispose of the matter consistent with the best interest of the child. A hearing was scheduled, and all interested parties were notified. On April 1, 1986, the court entered a protective order which directed that Edward S. "shall have supervised visitation with his minor children, Matthew Edward S. and Justin Edward S." On April 30, 1986, the court appointed William Wiker, Esquire to represent Justin as his guardian *ad litem.*

After numerous continuances, the first hearing was held on August 5, 1986. At the hearing, the father vehemently denied the allegation of abuse set forth against him. On February 23, 1987, additional hearings were held, and the court entered an order finding Justin S. to be "an abused child." However, the court was "unable to determine the

perpetrator of said abuse." Consequently, the court "ordered that the natural father have partial custody rights." The court also ordered that psychological evaluations of the children, parents and grandparents be performed prior to final disposition of the proceedings.

Later the same day, Mary Ann F. registered a complaint with the local police alleging Edward S. had sexually abused his minor children approximately fourteen months earlier. Prompted by her allegations, the court immediately ordered that the father's "partial custodial rights be exercised [only] in the immediate presence of the paternal [grandparents]."

On the morning of February 26, 1987, Justin's guardian *ad litem* petitioned the court for an emergency hearing on the recent developments. The court then ordered WCCB to take emergency protective custody of the two minor children, and the caption of the case was amended to include both children. In addition, the court appointed William J. Wiker, Esquire to represent Matthew S. as well as Justin.

Later that day, the guardian *ad litem* filed an amended petition for the placement of the minor children. Based upon evidence discovered earlier that day, the petition asserted that the mother had fabricated her allegations of sexual abuse and that she had forced her children to accuse unjustly their father of sexual abuse. The guardian *ad litem* also alleged that the father did not physically abuse Justin as contended originally. After reviewing the amended petition, the court promptly directed WCCB to relinquish custody of the children to their father.

A hearing was held on February 27, 1987, and evidence in support of the guardian *ad litem's* allegations, i.e. Mary Ann F. coerced her children into relating fictional accounts of abuse to WCCB officials and Edward S. was not responsible for any such abuse, was presented. The court-appointed psychiatrist expressed deep concern about the mother's "vindictive attitude and malice." He further testified that Matthew revealed to him that the true perpetrator of the physical abuse of Justin was the mother's paramour, Roy D. The court, having found the mother's testimony deny-

ing the guardian *ad litem's* allegations to be "simply incredible," granted custody of the children to their natural father. The court then limited the mother to supervised visitation with the children until a disposition hearing could be held on March 26, 1987. Subsequently, WCCB filed a petition for reconsideration of the court's order of February 23, 1987. This petition requested further hearings to determine the true identify of the perpetrator of the child abuse.

Following the disposition hearing on March 26, 1987, the court was still unable to identify positively the perpetrator of the physical abuse of Justin. However, exculpatory evidence absolutely eliminated the children's natural father, Edward S., as a suspect. The court believed the perpetrator could only be one of the following: the mother, the mother's brother, or one of the mother's "boyfriends," such as Roy D. The court stated, "It was abundantly clear that the mother maliciously coached the children into reporting the incidents of sexual abuse as a means of preventing the natural father from seeing his children."

The court disposed of the case on March 26, 1987, as follows: Edward S. was awarded custody of his two minor children, Justin and Matthew S.; WCCB was ordered to provide general protective services for the youths; the parents were ordered to undergo "parenting counselling"; WCCB was ordered to arrange for Mary Ann F.'s supervised visitation of her minor children; and, the court found no reason to disturb their order of February 23, 1987 which found Justin to be abused but did not name the perpetrator. Mary Ann F. then petitioned the court for reconsideration of its decision. The court refused, and this appeal followed.

This appeal presents an interesting question: whether a court is permitted to alter an existing custody arrangement between a child's parents without a determination of "dependency" in a disposition proceeding initiated pursuant to the Juvenile Act and the Child Protective Services Law.

Before discussing the substantive issues of this case, a brief outline of the relevant provisions of the Juvenile Act and the Child Protective Services Law is appropriate. The

primary purpose of the Juvenile Act is the preservation of family unity whenever possible. *In the Interest of Ryan Michael C.*, 294 Pa.Super. 417, 440 A.2d 535, 536–537 (1982). This purpose is expressed in 42 Pa.C.S.A. § 6301(b) which, in relevant part reads:

(b) Purposes.—This chapter shall be interpreted and construed as to effectuate the following purposes:

(1) To preserve the unity of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of the chapter.

\* \* \* \* \* \*

(3) To achieve the foregoing purposes in a family environment whenever possible, separating the child from parents only when necessary for his welfare or in the interest of public safety.

The provisions of the Juvenile Act are applied in a proceeding wherein a child is alleged to be dependent or delinquent. 42 Pa.C.S.A. § 6303(a)(1). For the purposes of this appeal, the Juvenile Act defines a dependent child as one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals[.]" 42 Pa.C.S.A. § 6302. In deference to its desire to protect and preserve the family unit, the legislature will only allow a court to dispose of dependency cases under the Juvenile Act "if the court finds from clear and convincing evidence that a child is dependent[.]" 42 Pa.C.S.A. § 6341(c). However, "[i]f the court finds that the child is not a dependent child ... it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding." 42 Pa.C.S.A. § 6341(a). The court's disposition of a dependent child under the Juvenile Act is governed by the provisions of 42 Pa.C.S.A. § 6351 which, in pertinent part, reads:

(a) General Rule.—If the child is found to be a dependent child the court may make any of the following orders of

disposition best suited to the protection and physical, mental, and moral welfare of the child:

(1) Permit the child to remain with his parents, guardian, or other custodian, subject to the conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

(2) Subject to the conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

(i) Any individual resident within or without the Commonwealth who ... is found by the court to be qualified to receive and care for the child.

(ii) Any agency or other private organization licensed or otherwise authorized by law to receive and care for the child.

(iii) A public agency authorized by law to receive and provide care for the child.

The Child Protective Services Law has a purpose similar to that the Juvenile Act. Its function is to facilitate the protection of abused children, and to preserve and stabilize the family life of abused children. The purpose of the CPSL is fully expressed in 11 P.S. § 2202 which, in part, reads:

Abused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. It is the purpose of this act to encourage more complete reporting of suspected child abuse and to establish in each county a child protective service capable of investigating such reports swiftly and competently, providing protection of children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve and stabilize family life wherever appropriate....

The CPSL, in 11 P.S. § 2203, defines child abuse as follows:

[Child abuse is] serious physical or mental injury which is not explained by the available medical history as being

accidental, or sexual abuse or sexual exploitation, or serious physical neglect, or a child under 18 years of age, if the injury, abuse or neglect has been caused by the acts or omissions of the child's parents or by a person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent. . . .

Hearings held under the provisions of the CPSL are generally governed by the procedural and evidentiary rules of the Juvenile Act. 11 P.S. § 2222. Upon consideration of a petition filed under the CPSL by the child's guardian *ad litem,* the court has the duty to order appropriate protective service for a child found in need and terminate or alter the conditions of any placement, temporary or permanent of the child. 11 P.S. § 2223.

■ We begin our analysis by noting that the Juvenile Act provides for dependency and delinquency action, but neither the Juvenile Act nor the CPSL provide for the independent action of "abuse." *In the Interest of R.M.R.,* 366 Pa.Super. 243, 530 A.2d 1381 (1987); *In the Interest of M.B.,* 356 Pa.Super. 257, 514 A.2d 599 (1986), affirmed *per curiam* (Slip Opinion, filed March 21, 1988); 42 Pa.C.S.A. § 6303. In a recent decision, *In the Interest of R.M.R.,* supra, 366 Pa.Superior Ct. 243, 530 A.2d 1381, we held that the CPSL does not create or include a separate action for child abuse, and, under the Juvenile Act, a finding of abuse can only be made as a part of dependency proceeding in which abuse is alleged. 366 Pa.Superior Ct. at 260, 530 A.2d at 1389. Thus, under most circumstances, proper disposition of a proceeding in which alteration of an existing custody arrangement is a possible result can occur only after an adjudication of dependency because provisions for adjudication and disposition of abuse actions do not exist in either the Juvenile Act or the CPSL. *In the Interest of R.M.R.,* 366 Pa.Superior Ct. at 260, 530 A.2d at 1389, explaining *In the Interest of M.B.,* 356 Pa.Superior Ct. 257, 514 A.2d 599. Instantly, the lower court erroneously reasoned that the action of abuse did exist. However, this

flaw in the court's analysis does not negate the otherwise sound decision of the court below,[1] and through the following discussion, we will explicate why the lower court did not need to declare the children dependent prior to disposition of the case.

■■■ Generally, any attempted disposition of the custody of an infant in a dependency proceeding is improper where the record indicates no finding of dependency was ever made. *Helsel v. Blair County Children & Youth Services*, 359 Pa.Super. 487, 497, 519 A.2d 456, 461 (1986); *In the Interest of Ryan Michael C.*, 440 A.2d at 536; *Hemenway v. Hemenway*, 284 Pa.Super. 481, 426 A.2d 149 (1981). As previously stated, the Juvenile Act defines a dependent child as one who "is without proper parental care of control...." 42 Pa.C.S.A. § 6302. Whether a child is lacking proper parental care and control encompasses two discrete questions: 1) Is the child "at this moment without proper parental care or control?"; 2) If so, is such care and control "immediately available?" *In the Interest of Anita H.*, 351 Pa.Super. 342, 505 A.2d 1014, 1015 (1986); *In re Barclay*, 321 Pa.Super. 417, 468 A.2d 778, 781 (1983); *In the Matter of Yeager*, 309 Pa.Super. 491, 455 A.2d 717, 719 (1983); *In the Matter of Mark T.*, 296 Pa.Super. 533, 442 A.2d 1179, 1180 (1982). Only if the court concludes by "clear and convincing evidence" that proper parental care and control are not available will it adjudicate a child dependent, and, absent such a finding, custody must be returned to the parents immediately. *In the Interest of Anita H.*, 505 A.2d at 1015; *In re Haynes*, 326 Pa.Super. 311, 473 A.2d 1365, 1366–67 (1983); *In the Interest of Ryan Michael C.*, 440 A.2d at 536; *In the Interest of Theresa E.*, 287 Pa.Super. 162, 429 A.2d 1150, 1155 (1981). "The standard of 'clear and convincing evidence' means 'testimony [that] is so clear,

1. Instantly, this action was initiated pursuant to the provisions of both the Juvenile Act and the CPSL alleging "dependency and abuse." (N.T., p. 2). Logically, the instant case does not suffer from the problems inherent in the erroneous disposition of a non-existent independent action of "abuse." Consequently, the court possessed the requisite jurisdiction to hear and dispose of this case.

direct, weighty, and convincing as to enable the [trier of facts] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' " *In the Matter of Jackson,* 302 Pa.Super. 369, 448 A.2d 1087, 1089 (1982), quoting *In re Jackson,* 267 Pa.Super. 428, 406 A.2d 1116, 1118 (1979).

 Pennsylvania law is clear that the care and protection of a child should be achieved in a family environment whenever possible, and a child should be separated from his parents only when necessary for his welfare or in the public interest. *In the Interest of Anita H.,* 505 A.2d at 1016, 42 Pa.C.S.A. § 6301(b)(3). Further, a child who has been adjudged dependent may not be removed from parental custody unless such separation is clearly necessary. Clear necessity is established when the court has considered alternative dispositions which would allow the child to remain with his parents and determined that those alternatives to separation are unfeasible. *In the Interest of Y.P.,* 353 Pa.Super. 185, 509 A.2d 397, 399 (1986); *In the Interest of Ryan Michael C.,* 440 A.2d at 536–537; *In the Interest of Theresa E.,* 429 at 1156; *In the Interest of K.B.,* 276 Pa.Super. 380, 419 A.2d 508, 515 (1980).

Our standard of review in dependency cases is quite broad, but it is fundamentally limited by our inability to nullify the factfinding responsibilities of the lower court. *In the Interest of A.V.,* 363 Pa.Super. 180, 525 A.2d 778, 779 (1987), dissent of Wieand J.; *In re Frank W.D.,* 315 Pa.Super. 510, 462 A.2d 708, 711 (1983); *In re Barclay,* 468 A.2d at 782. We must defer to the factual findings of the hearing judge and accord them great weight as he has had an opportunity to observe and rule upon the credibility of the witnesses and parties who have appeared before him. *In re Frank W.D.,* 462 A.2d at 711; *In re Barclay,* 468 A.2d at 782; *In the Interest of Black,* 273 Pa.Super. 5⅓6, 417 A.2d 1178, 1182 (1980).

After a review of the record, we can discern no reason to doubt the veracity of the lower court's findings of fact. Clearly, the court was correct when it found, after several

evidentiary hearings, that Justin was a physically "abused child" within the meaning of CPSL, 11 P.S. § 2203. Although the court could not identify the actual perpetrator of the abuse, it was able to limit the possible perpetrators to the following: appellant, appellant's brother, or the appellant's paramour, Roy D. The court determined that all of the accusations levied against the children's natural father were absolutely unfounded. The court also found that the appellant had fabricated tales of sexual abuse against the boys' father which she then coerced her sons into telling the authorities. Based upon those findings, the court concluded that the appellant was unable to provide proper parental care and control of her children. Further, the court stated:

> Based upon the evidence presented to this Court, it was not only clear and convincing what course of action this Court had to take, it was evidence without a shadow of a doubt that mandated the order of March 26, 1987. The appellant/mother had so corrupted the children in this case by coaching them to allege that the father had sexually abused them, that this action had to be taken immediately. There wasn't the slightest doubt in this Court's mind that if the children stayed in the custody of the mother, that she would continually and repeatedly have the children make unfounded accusations against their father. The effect of this would have placed the father in such a defensive posture that he simply would have forfeited any rights he has to his children, a move the mother obviously desires. Further, the Child Welfare Agency, in this case the Westmoreland County Children's Bureau, would continually be investigating abuse allegations against the father thus involving unnecessary manpower. More important, however, if the mother continued to have custody of the children, the children themselves would suffer emotionally from such intense pressure from the mother. (Opinion at pp. 11–12).

Finally, the court "found that the father could provide proper care for the children." (Opinion, p. 11). We will not overrule the lower court's findings as it is abundantly clear that they are supported by competent evidence.

■ The appellant's argument can be separated into two interrelated issues: First, the appellant argues that the lower court erred when it altered the existing custody arrangement without first adjudging her children dependent; and second, the appellant alleges that the court lacked sufficient evidence to determine that she was unable to provide proper parental care and control or that clear necessity dictated modification of her custody rights. We find that both contentions lack merit.[2]

■ First, we will discuss the appellant's allegation that the lower court erred when it altered the existing custody arrangement without first adjudging her children dependent. If the court below had awarded custody of her children to a state or private child care agency without a determination of dependency, the appellant would have a valid argument. See *In the Interest of Ryan Michael C.,* 440 A.2d 535, *Helsel v. Blair Co. C & Y Services,* 519 A.2d 456. Even if her children were declared dependent, the appellant could possibly have regained the custody of her children had the lower court neglected to determine that clear necessity mandated the children's removal from her custody and placement with an agency. See *In the Interest*

2. Additionally, the appellant raises two meritless issues which we will briefly discuss. First, the appellant contends that the court cannot grant custody to a non-custodial parent in this type of action because a dependency proceeding is not to be regarded as an alternative method for a non-custodial parent to seek custody of the child, citing *In the Interest of Theresa E.,* 429 A.2d at 1155, and 42 Pa.C.S.A. § 6334. While that is true, the appellant fails to cite fully *In the Interest of Theresa E.,* which further holds that there is nothing in the Juvenile Act to prevent a non-custodial parent who is seeking to protect his child from filing a dependency petition, and, consequently, obtaining custody of the child. 429 A.2d at 1155; *In re Barclay,* 468 A.2d at 780. Moreover, the non-custodial father did not initiate the instant proceeding. In fact, the appellant's own malicious allegations against her ex-husband instigated this action which ultimately resulted in the reduction of her custodial rights. Second, the appellant contends that the court erred when it granted custody of Matthew to his father simply because the custody of Justin was altered. See *In the Interest of Theresa E.,* 429 A.2d at 1156 (a child should not be found dependent simply because his siblings are). However, the record clearly indicates that the court altered Matthew's custodial situation based upon a finding that he lacked proper parental care and control independent of the abuse of Justin.

*of Theresa E.,* 429 A.2d 1150. However, we find that, in a dependency proceeding, a court may grant custody of an allegedly dependent child to that child's non-custodial natural parent without first declaring the child dependent as long as sufficient evidence of dependency exists.

The fundamental purpose of proceedings under the Juvenile Act is to preserve the unity of the family. The care and protection of children are to be achieved in a family environment whenever possible. 42 Pa.C.S.A. § 6301(b)(1), (3). Instantly, the lower court found that the natural father could provide proper parental care and control of the children, and the mother could not. The court found the appellant's son, Justin, to be an "abused child." When abuse is alleged as a part of a dependency proceeding, a court's finding of "abuse" as defined by the CPSL would be sufficient evidence under most circumstances to support an adjudication of dependency. However, a court cannot adjudge a child to be dependent when his non-custodial parent is ready, willing, and able to provide the child with proper parental care and control, especially when the lower court finds that the child was abused while under the custodial parent's care and control.

This Court previously expressed a similar opinion. Our decision in the case of *In the Matter of Mark T.,* 442 A.2d 1179, is relevant to the case before us. Therein, the mother and father were living apart, with the mother retaining physical custody of the child. The lower court adjudicated the child to be dependent without establishing whether the non-custodial father was able to provide proper parental care and control. We reversed and remanded the case for further hearings, holding that the lower court must examine whether the father was capable of rendering proper parental care and control prior to adjudicating that his son was "dependent." *In the Matter of Mark T.,* 442 A.2d at 1180. Implied in that decision is our current position that a child whose non-custodial parent is capable and willing to provide proper parental care is not a dependent child within the meaning of 42 Pa.C.S.A. § 6302.

Our recent decision in *In the Interest of Anita H.*, 505 A.2d 1014, is also relevant to this discussion. The facts of *In the Interest of Anita H.* are as follows. The children's mother and father were living apart, with the mother retaining physical custody of her three children. At the dependency hearing, the children's respective natural fathers appeared in an effort to obtain custody of their children. The lower court determined that the children were dependent and granted custody to Children and Youth Services without allowing the fathers to testify. We reversed and remanded the case for further hearings, holding that the children were improperly adjudicated dependent as the court could not adequately rule upon the question of whether proper parental care and control was "immediately available" due to its refusal to hear the testimony concerning the parental fitness of the non-custodial fathers. *In the Interest of Anita H.*, 505 A.2d at 1016. The obvious result of *In the Interest of Anita H.* is that a non-custodial parent may intervene in a dependency action filed by a third party in order to protect and prevent his or her child from being declared dependent and placed in the custody of a public agency or foster home.

Both cases, *In the Matter of Mark T.*, supra, and *In the Interest of Anita H.*, supra, clearly indicate that it is the duty of the trial court to determine whether the noncustodial parent is capable and willing to render proper parental care and control prior to adjudicating a child dependent. If the court determines that the custodial parent is unable to provide proper parental care and control "at this moment" and that the non-custodial parent is "immediately available" to provide such care, the child is not dependent under the provisions of the Juvenile Act. Consequently, the court must grant custody of the allegedly dependent child to the non-custodial parent. Once custody is granted to the noncustodial parent, "the care, protection, and wholesome mental and physical development of the child" can occur in a family environment as the purpose of the Juvenile Act directs. 42 Pa.C.S.A. § 6301(b). We find that, in the case

*sub judice,* the court below did not err when, without a determination of dependency, it removed the children from the custody of the appellant who was not providing her children with proper parental care and control and placed them in the custody of their natural father with whom proper parental care and control and a stable family life were "immediately available."

■■■■■ Second, we will discuss the appellant's allegation that the court lacked sufficient evidence to determine that she was unable to provide proper parental care and control or that clear necessity dictated modification of her custody rights. While it is true that the lower court was unable to name the perpetrator of the physical abuse on Justin, we agree with the trial court that sufficient clear and convincing evidence was presented to support their disposition of the case. We also agree with the court's determination that the appellant was unable to provide Justin and Matthew with the proper parental care necessary for their physical and emotional health. Previously, this court defied proper parental care as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In the Interest of Pernishek,* 268 Pa.Super. 447, 458, 408 A.2d 872, 878 (1979). Instantly, Justin was abused while in the custody of the appellant, and the evidence presented indicated that the perpetrator was likely a member of appellant's household. Those facts alone are *prima facie* evidence of child abuse by the appellant.[3] In addition, the appellant's instant course of action designed to prevent her children from seeing their natural father does not qualify as "care which is geared to the particularized needs of the child[ren]."

3. The Child Protective Services Law, 11 P.S. § 2222(3), in part, states:
 (3) Evidence that a child has suffered serious physical injury, sexual abuse or serious physical neglect of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of such child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the child's welfare.

The case of *In re Frank W.D.*, 462 A.2d at 709, presents facts similar to those before this Court. Therein, we affirmed the lower court's classification of an abused child as dependent and removal of the child from the mother's custody even though the questions of who actually abused the child and when did the abuse actually occur remained unanswered. *In re Frank W.D.*, 462 A.2d at 712. Similarly, the evidence relating to the abuse of Justin would have been sufficient to sustain an adjudication of the children's dependency if Edward S. had not prevented his sons from being declared dependent.

 Additionally, evidence presented at the hearings indicated that the appellant did, in fact, know the true identity of the perpetrator of the abuse. Matthew reportedly told the court-appointed psychologist that his mother knew that it was her paramour, Roy D., who had physically abused his brother. Rather than disclose the name of the abuser, the only visible steps that the appellant chose to take in protection of her children was the fabrication of malicious and vindictive stories about her ex-husband. Thus, the appellant demonstrated an unwillingness to take adequate precautions aimed at protecting her children from possible future abuse. See *In the Interest of K.B.*, 419 A.2d 508 (1980) (mother's willful failure to take affirmative precautions against possible future abuse was sufficient to support determination of dependency); *In re Barclay*, 468 A.2d 778 (children mistreated by step-father, and mother did little to prevent abuse, adjudication of dependency proper). We would be derelict in the execution of our duty to protect the mental and physical welfare of the children if we were to reverse the lower court's decision simply because the court could not precisely identify the person who abused Justin. Moreover, we agree with the lower court's finding based upon the testimony of the court-appointed psychologist that the appellant's manifest disregard for the emotional and mental well-being of her children, as evidenced her "vindictive and malicious" attitude towards the children's father and her fabrication of false statements about him,

was sufficiently detrimental to the children's welfare to support the court's disposition of this case.

Although our affirmance of the lower court's decision does not constitute a permanent order, we firmly believe that the court's decision not only enacted the express purposes of the Juvenile Act and the Child Protective Services Law but also served the best interest of the children. *In the Interest of Black,* 417 A.2d at 1181 (the interest of safeguarding the permanent welfare of the child dictates decrees concerning children are temporary and subject to modification upon changed conditions); *In re Frank W.D.,* 462 A.2d at 713. In conclusion, we hold that, in a dependency proceeding, a court may grant custody of an allegedly dependent child to that child's non-custodial natural parent who is capable of providing proper parental care for that child without first declaring the child dependent. Instantly, we find that the lower court correctly awarded the custody of Matthew and Justin S. to their natural father, limiting the appellant to supervised visitation and ordering the family to avail themselves of counselling. Accordingly, the order of court is affirmed.

Order affirmed.

TAMILIA, J., files a dissenting opinion.

TAMILIA, Judge, dissenting:

I respectfully dissent. The analysis of the majority is correct until it makes a finding that the trial court had the authority to transfer custody to the noncustodial parent without a finding of dependency as to the custodial parent. Authority to make a custodial disposition follows only upon an adjudication of dependency pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351(a), which provides:

(a) **General Rule**—*If the child is found to be a dependent child* the court may make any of the following orders of disposition best suited to the protection and physical,

mental, and moral welfare of the child[.] (Emphasis added)

Nowhere in the Juvenile Act is there authority in the court to act without a finding of dependency.

The majority has misread *In the Interest of Theresa E.*, 287 Pa.Super. 162, 429 A.2d 1150 (1981) in holding that a change of custody can be made in a dependency proceeding, without a dependency finding, if one of the parents is not subject to the charge of neglecting the child. The ruling in the case sub judice will foster what always has been denied, the use of dependency proceedings as a substitute for a custody action.

I differ with the majority that a child may not be determined dependent if the out of custody parent is not neglectful and is willing to take the child. It frequently occurs that a child is subject to abuse in one household and needs the intervention of the Children and Youth Services and the court, with their investigative powers, when a traditional custody proceeding might prove ineffective. The fine line between custody actions and dependency actions should not be breached on either side. Here, if there was dependency by the mother, the court should so find and award custody to the father. If the record is not clear as to neglect or abuse but would warrant consideration of custody, based on fitness of the parents and best interest of the child, the dependency action should be dismissed and the parties instructed to proceed in a custody action.

The heavy involvement of the state should be avoided at all cost, but if the evidence is clear and convincing as to abuse and neglect, the protection of the child warrants such a finding. This does not interfere with the underlying philosophy of retaining children within the family when the first alternative for custodian always will be a suitable family member.

Here it would appear dependency would be a proper adjudication and the change of custody would be in order.

I would remand for such a finding.