KELLER, J.,
PROCEDURAL HISTORY
Berks County Children and Youth Services (hereinafter “BCCYS”) filed dependency petitions on August 20, 2014.[1] In those petitions, BCCYS alleged that Stepfather, A.D., had a lengthy history of inappropriate sexual contact with minors. Further, BCCYS alleged that A.D. admitted to sending a sexually graphic picture to his stepdaughter, I.A.-H., and that mother did not believe A.D. posed a risk to the minor children.
The court held an adjudicatory hearing on October *187 15, 2014. At the conclusion thereof, the court entered orders declaring the children dependent. The children’s physical custody remained with mother and the court ordered that mother participate in enumerated services. Specifically, the court ordered that mother cooperate with a non-offending parent evaluation and any recommended treatment. A.D. was ordered to not have any contact with the minor children until therapeutic recommendation. Mother appealed from the court’s adjudicatory orders and those appeals remain active in the Pennsylvania Superior Court.[2]
On February 27, 2015, BCCYS filed a motion for review of dispositional order. In that motion, BCCYS alleged that contact was continuing between A.D. and the minor children. BCCYS averred that mother was unable to ensure the safety of the minor children in her home. The court held a hearing to address the motion on March 18, 2015. (Notes of Testimony, hereinafter N.T., 3/18/15). At the conclusion thereof, the court entered orders transferring custody of the minor children to their biological father, R.A.-H.[3] The court denied mother’s motion for reconsideration on March 26, 2015.
Mother now appeals from the court’s dispositional orders transferring custody to father. Mother’s notices of appeal and concise statements were filed on April 6,2015. Mother asserts the following errors on appeal:
1. The court erred in removing two of mother’s five children from her home.
2. The court erred in removing two of mother’s five *188 children from her home, when the evidence produced at the hearing did not provide clear and convincing evidence that leaving the two removed children were was [SIC] not in those children’s welfare.
3. The court erred in finding clear and convincing evidence to support removing two of mother’s five children from her home, when the petition to place the children outside the home contained materially false evidence, specifically the allegations that mother and material[SIC] grandparents were permitting telephone communication between mother and stepfather, when the child testified that she did not speak on the phone to her stepfather.[4]
4. The evidence presented at the hearing established that the best interest of the two removed children would be served by leaving the children in the home because the children were bonded with their mother, with their siblings and because the counsellors[SIC] testified that removing the children would have an adverse effect on the children’s treatment.
5. The court erred in overruling it’s [SIC] order of February 27, 2015 (which accepted an[SIC] adopted a master’s report] finding the children safe in mother’s home and mother was moderate[SIC] compliant with counselling[SIC], when no new evidence was presented from February 26,2015 (the date of the master’s report) *189 until the full hearing before this court.
6. The court committed an error of law and violated mother’s due process rights, when the court addressed matters outside the emergency petition for custody.
7. The court erred in finding that reasonable efforts were not available or applicable to leave the children in the home, when Mother was compliant with counselling[SIC] and was following the court’s prior orders
8. The court committed an error when it interviewed a child outside the presence of the attorneys for the parents, as the presence of the parent attorneys is required under Pa Rule Juv Pro 1334.
DISCUSSION
Mother argues that the court erred in transferring custody of the minor children to father. Specifically, mother contends that there was insufficient evidence that the minor children were unsafe in her home, that the evidence showed no continued contact between A.D. and the children, and that the minor children were bonded to her and their siblings.
“The [c]ourt shall conduct [a] dispositional hearing in an informal but orderly manner.” Pennsylvania Rule of Juvenile Court Procedure 1512(A). After the dispositional hearing, the court “shall issue a written order, which provides that the disposition is best suited to the safety, protection, and physical, mental and moral welfare of the child.” Pennsylvania Rule of Juvenile Court Procedure 1515(A). “If the child is found to be a dependent child[,] the [cjourt may... [p]ermit the child to remain with his parents, guardian or other custodian...[or] transfer temporary legal *190 custody to...[a]ny individual..., including any relative, who...is found by the [cjourt to be qualified to receive and care for the child.” 42 Pa. cons. stat. § 6351(A)(l)-(2)(i). Before removing a child from the home, the court shall determine that staying in the home is contraiy to the child’s welfare, safety or health, that reasonable efforts to prevent removal were made or unnecessary, and that efforts were made to place siblings together. 42 Pa. cons. stat. § 6351(b). When a county agency requests modification of a dependent child’s placement, the court may hold a prompt hearing to determine if modification is proper. Pennsylvania Rule of Juvenile Court Procedure 1606(D)(1).
The court believes that sufficient evidence was presented at the October 15th and March 18th hearings to show that minor child, I.A.-H., was unsafe in mother’s care. No additional, reasonable measures could be put in place to assure the minor child’s safety. While there was some disagreement over the level of contact between I.A.-H. and A.D., there was, at least, some contact that the expert testimony showed would be detrimental to I.A.-H.’s treatment. (N.T., 3/18/15, at 7, 10-11, 18-19). Additionally, the court found evidence of mother’s continued connection with A.D., in light of the safety risk he poses to her minor children, extremely important. Months after discovering that A.D. sent a sexually-graphic picture to I.A.-H., mother became pregnant with A.D.’s child. (N.T., 3/18/15, at 35-36). The court acknowledges that the expert testified that a bond existed between mother and I.A.-H. as well as I.A.-H. and her other siblings. (N.T., 3/18/15, at 17, 23-24). In fact, the court took the expert’s testimony in consideration when making its dispositional ruling transferring custody of I.A.H. and full-sibling, R.A.-H., to father, a home where they frequently visited. The court took great care to avoid I.A.-H.’s perception *191 that transferring custody to father was a punishment for her disclosure. (N.T., 3/18/15, at 19-21).
In addition to the clear evidence supporting the court’s conclusion that the minor child was unsafe in mother’s home, the court notes that placement was with biological father. “[I]n a dependency proceeding, a court may grant custody of an allegedly dependent child to that child’s non-custodial natural parent...as long as sufficient evidence of dependency exists.” In the Interest of Justin S., 543 A.2d 1192, 1199 (Pa. Super. 1988). “[I]t is the duty of the trial court to determine whether the noncustodial parent is capable and willing to render proper parental care and control...” Id. at 1200. The minor children’s father was available to provide care in a safe environment. It was the court’s duty to consider father as a placement option. Placement of I.A.-H. and her full-sibling, R.A.-H., in father’s home was a safe option to avoid foster care.
In alleged error five (5), mother claims that the court erred by transferring custody of the minor children to father when on February 27, 2015, the court accepted a master’s recommendation finding the children safe with mother. It appears to the court that there were some timing issues with discovery of the alleged contact which led BCCYS to file its modification request. The master’s recommendation was dated February 26, 2015, the same day that BCCYS alleged it learned of the contact between A.D. and I.A.-H. While the child may have been safe, based on all of the information available at the master’s hearing on February 26,2015, the subsequent discovery led BCCYS to request a modification. The court held a hearing on that request and, based on the evidence presented on March 18, 2015, transferred custody to father.
*192 In alleged error six (6), mother asserts that the court violated her due process by considering matters outside of BCCYS’ motion for a placement modification. At the March 18th hearing, mother’s attorney argued the only relevant issue was contact between A.D. and the minor children. (N.T., 3/18/15, at 9-10). However, BCCYS’ motion requested removal of the children from mother’s home based on concerns with mother’s ability to protect. It was certainly within the court’s role to consider any evidence of the minor child’s treatment and mother’s treatment as it related to protective factors. The court would have been unable to make a dispositional decision without considering all relevant evidence.
Lastly, in alleged error eight (8), mother argues that the court violated Pennsylvania Rule of Juvenile Court Procedure 1134[5] by interviewing the child outside of the presence of mother’s attorney. Rule 1134 provides “[u]pon motion by any party or on the court’s own motion, in camera proceedings are to be recorded and reach party’s attorney shall be present.” The court acknowledges, and the record reveals, that the court spoke with I.A.-H. in the jury room with the guardian ad litem. (N.T., 3/18/15, at 4-8). Initially, the court notes that mother’s attorney never requested to be present for the court’s interview or objected to the interview on March 18th. Furthermore, the interview was transcribed so all parties have access to the substance of that interview. Even if the court’s interview was conducted in error, the court does not believe that this supports a reversal of its March 18th orders.
Therefore, we respectfully request that mother’s appeal be denied.

. BCCYS also filed dependency petitions for the minor children’s half-siblings, S.K., D.D. and K.D. Mother is the biological parent of all five half-siblings. However, this appeal relates only to full-siblings, I.A.-H. and R.A.-H.

~See 1914 MDA 2014 and 1915 MDA 2014.

. Father (R.A.-H.) and the minor child (R.A.-H.) share the same name.

. Error No. 3 from the Concise Statement filed for child, R.A.-H., differs from the Concise Statement filed for child, I.A.-H. Error No. 3 for child, R.A.-H. reads:
The Court erred in finding clear and convincing evidence to support removing this child from the home when the petition for [R.A.-H.] does not mention any reason to remove this child from the home. In fact it appears the only reason to remove [R.A.-H.] was because he was a sibling of his sister.

. In her Concise Statements, Mother cites to Pennsylvania Rule of Juvenile Court Procedure 1334. However, based on context, it is clear that Mother intended to cite to Pennsylvania Rule of Juvenile Court Procedure 1134.