J-A12029-17 J-A12030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1612 WDA 2016 |

Appeal from the Order Entered September 23, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  CP-02-DP-541-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: S.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.M. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1622 WDA 2016 |

Appeal from the Order Entered September 23, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  CP-02-DP-541-2016

BEFORE:  OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                **FILED AUGUST 10, 2017**

Appellant, S.H. ("Child") through appellate counsel, KidsVoice ("GAL"), appeals from the order entered on September 23, 2016, adjudicating Child dependent pursuant to 42 Pa.C.S.A. § 6302.  Appellant, J.M. ("Father") also appeals from the September 23, 2016, order.  This Court consolidates both

appeals *sua sponte*, as Appellants appeal the same order and present the same issues. *See* Pa.R.A.P. 513. We affirm.[1]

The relevant facts are as follows:

On June 15[], 2016, Harrison Township police reported to CYF that the mother of four year old [S.H.] and her boyfriend had come to the police station stating that he was missing. The mother further said that the boy had been attacked and possessed by supernatural beings at the mother's home and at the maternal grandfather's home and that the child had turned into a zombie. The police described their behavior as bizarre and suspected that they were under the influence of drugs or alcohol. During the police investigation the mother advised the police that she and her boyfriend decided that they did not want the child anymore and drove the child to the Mt. Oliver section of Pittsburgh and left the child with a male stranger. The Harrison Township police contacted Mt. Oliver to investigate. The Mt. Oliver police found the child at the godmother's home. The Mt. Oliver Police immediately observed that the child had a burn on the back of the right leg and reported this to CYF.

The child was then immediately transported by EMS to Children's Hospital of Pittsburgh for examination by Dr. Adelaide Eichman. Dr. Eichman diagnosed that the child had suffered an untreated burn to the back of the right thigh along with multiple and significant bruising to his ears, forehead, cheeks, left neck and back arms. The bruising to the left side of his face was consistent with a slap mark and the blood work indicated that the child had suffered muscle damage. The child had multiple bruises in abnormal locations that are normally protected areas

---

[1] While this appeal was pending, the GAL provided to this Court a permanency review order, dated April 18, 2017, which terminated court supervision and S.H. remained with Father, rendering this appeal moot. Nevertheless, this Court may decide questions that have been rendered moot when a party may be detrimentally impacted by the trial court's decision. *See In re M.B.*, 101 A.3d 124, 127 (Pa. Super. 2014) (stating "because there can be collateral consequences to a finding of dependency, it is excepted from the mootness doctrine").

and not typically injured in childhood play. Dr. Eichman found that [S.H.] had been the victim of physical child abuse and that the injuries were inflicted. Dr. Eichman further concluded that this child had suffered substantial pain at the time that he was physically abused.

Dr. Eichman promptly filed a child line report and the child immediately had a forensic interview at Children's Hospital Child Advocacy Center by Jamie Mesar, M.S.W., and observed by Allegheny County Police Detectives Kuma and Holzwarth, CYF case worker Justina McMasters and two other [C]hild Advocacy Center staff members. Ms. Mesar's report further found that the child was developmentally delayed and his speech was often difficult to understand. The child's forensic interview indicated that the mother's boyfriend Tyrone had burned and hit him. The child was immediately taken into emergency protective custody via court order out of CYF's and the court's concerns for the child's physical and psychological safety and trauma and was placed with a Wesley Spectrum foster family. Allegheny County Detectives interviewed the mother and her boyfriend Tyrone on the same day and they admitted that Tyrone had hit the child at the request of the mother. The Allegheny County Police filed child abuse charges against the mother and her boyfriend which are pending.

On 6/16/2016, CYF requested a shelter hearing and invoked court jurisdiction alleging again that the child had been badly abused and the biological father was unknown. At the hearing the next day before a hearing officer and not this court, neither the mother nor biological father appeared, but members of the mother's family did attend. The mother apparently was notified but did not attend and the biological father continued to be unknown to CYF. CYF interviewed the maternal family members attending for possible kinship placement but they were screened out for recent CYF and criminal histories. The mother's family members who had helped the mother care for the child for the last four years did not know the biological father's name and did not have any contact information and his identity remained unknown.

The biological father left a voicemail with the caseworker over the weekend after the hearing and then four days later, CYF spoke with the biological father for the first time on June 21, 2016. In legal contradiction with itself and only hours after the first meeting with the biological father, CYF filed a petition

alleging the dependency of [S.H.] while also alleging that the biological father was a ready willing and able parent and without investigations into the relationship between the child and biological father or any other of this child's prospective future caretakers.

Trial Court Opinion, 12/22/16, at 2-4 (citations omitted).

In June 2016, CYF filed a petition for dependency. In September 2016, an adjudicatory hearing was held, following which, the court adjudicated S.H. a dependent child but remained in Father's physical custody. These timely appeals followed, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued a responsive opinion.

Appellants raise the following issues on appeal, restated for clarity:

A. Did the trial court err or abuse its discretion in adjudicating S.H. a dependent child under subsections (1) and (3) of the Juvenile Act?

B. Did the trial court err or abuse its discretion in appointing second Guardian *ad litem* to represent S.H.?

GAL's Brief at 4; Father's Brief at 7. [2]

Appellants challenge the trial court's dependency adjudication. Our Supreme Court set forth our standard of review for dependency cases as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility

_____

[2] In his brief Father challenges both the adjudication of dependency and the appointment of a second GAL as a single question raising both issues.

- 4 -

determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re M.B.*, 101 A3d 124, 126-127 (Pa. Super. 2014).

In relevant part, Section 6302 of the Juvenile Act defines a "dependent child" as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;

> \* \* \*

> (3) has been abandoned by his parents, guardian, or legal custodian[.]

42 Pa.C.S.A. § 6302.

"A court cannot adjudge a child to be dependent when his non-custodial parent is ready, willing, and able to provide the child with proper parental care and control, especially when the lower court finds that the child was abused while under the custodial parent's care and control." *In Interest of Justin S.*, 543 A.2d 1192, 1199 (Pa. Super. 1988); *see also In re M.L.*, 757 A.2d 849 (Pa. 2000) (holding that a child whose non-custodial parent is ready, willing, and able to provided adequate care to the child

cannot be found dependent). However, a non-custodial parent's willingness is irrelevant if they have never parented the child. *In re. B.B.*, 745 A.2d 620 (Pa. Super. 1999) ("[T]he fact that [father] is completely unknown to the children prevents his designation as a proper parental caregiver to them.").

Appellants contend that Father was ready, willing, and able; therefore, S.H. was not a dependent child pursuant to 42 Pa.C.S.A. § 6302(1) and (3).[3] Appellants assert that after an investigation, CYF determined that there were no concerns with Father, that he resides with his paramour and his two other children, is employed at the US Postal Service, and maintains a residence. GAL's Brief at 23.

However, Appellants failed to address Father's lack of involvement in his child's life, and CYF did not interview Father's paramour or the other children. *See* Trial Court Opinion at 5. While Father may be ready and willing to parent S.H. he is unable due to his virtual nonexistence in his child's life. As noted by the trial court, "[S.H.] did not realize that the biological father [was] actually his father and did not know the names of his two half-siblings who live in the biological father's home." *Id.* at 10.

---

[3] CYF did not plead subsection (3) in its dependency petition; however, "absent prejudice to any party, the court may allow a dependency petition to be amended if the petition alleges a different set of events or allegations…" Pa.R.J.C.P. No. 1334(A)(2).

Appellants assert that the court's reliance on **In re B.B.** is misplaced, as the non-custodial parent in that case had only seen his children once since birth, whereas Father in the instant case has seen S.H. as recently as Easter 2016, and S.H. refers to him as "Dad." GAL's brief at 25. We do not find the facts distinguishable. Father is virtually a stranger to S.H., having only seen the child ten times in his entire life. The trial court reasoned as follows:

> The biological father finally testified and admitted that he had only visited or spent time with the child approximately ten times since the child's birth four years ago on 12/[]/2011. In addition, more than half of these visits were for an hour or less, and occurred prior to the child's second birthday. For perspective, and giving him the benefit of doubt on his statement of ten parent-child interactions consisting of eight, one-hour visits and two overnights in 1,635 days of the child's life, that is less than .0006 or less than [1%] of the child's life! The biological father admitted to CYF that he had no contact with the child for more than two and a half years prior to February 2016, at which time he had his first of two ever overnight visits with the child. Prior to that visit, the mother had to show the child photos of the biological father to identify him as his father since the child had no recollection or memory of his biological father at that time. The mother testified that prior to the February 2016 visit; the child had identified one of mother's prior paramours as being his dad. The biological father also significantly admitted that he had not recently seen the child for at least ninety days. The biological father claimed that his lack of co-parenting of the child was solely due to the mother hiding her whereabouts from him. The court did not find the biological father's testimony credible on this issue given the ample evidence that he had access to the child support petitions and support orders that provided the parties addresses.

Trial Court Opinion at 13.

Furthermore, the court did not find credible Father's explanation for his lack of visitation. We accept the trial court's credibility determinations and do not discern an abuse of discretion.

In their second issue, Appellants contend that the trial court abused its discretion in appointing a second guardian *ad litem*. However, GAL has filed a motion to dismiss, seeking to withdraw this claim on mootness grounds, as the case is now closed and the appointment of both GAL's has ended. "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." *In re Cain*, 590 A.2d 291, 292 (Pa. 1991).

Here, the posture of this case has changed. The Allegheny County Court of Common Pleas issued an order closing S.H.'s dependency case, thus confirming custody with Father. *See* Order for Termination of Court Supervision, 4/18/17. We conclude that this issue is moot and, therefore, grant GAL's motion to dismiss. As such, we will not address the second issue raised in Appellants' briefs.

Motion to dismiss granted. Order affirmed.

Judge Olson joins this memorandum.

Judge Solano joins this memorandum and files a concurring statement in which Judge Olson joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2017