J-A19026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.D., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.D., FATHER | : : : : : : : : | |
| | : | No. 450 EDA 2020 |

Appeal from the Order Entered January 3, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001606-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: N.D., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.D., FATHER | : : : : : : | |
| | : | No. 451 EDA 2020 |

Appeal from the Order Entered January 3, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001607-2019

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 22, 2020**

N.D. ("Father") appeals from the order adjudicating as dependent his two children, N.D. ("Child 1") and N.D. ("Child 2") (collectively, "Children"). We conclude the trial court did not err in finding the Philadelphia Department of Human Services ("DHS") proved by clear and convincing evidence that Children were dependent children. We therefore affirm.

The trial court gave a full statement of the factual and procedural history of this case, and we adopt it as our own. *See* Trial Court Opinion, filed Apr. 23, 2020, at 1-3, 4-6 ("1925(a) Op."). We will give only a brief summary here. Child 1 was born in February 2012 and Child 2 was born in March 2014. DHS became involved with Children in October 2019 due to concerns that T.C. ("Mother") had an alcohol addiction and was unable to care for Children. Father resided in Florida and had not seen Child 2 since 2015 and Child 1 since 2016. Although Father told DHS he was employed and had appropriate housing, he did not present documentation to support these claims. DHS filed the subject dependency petitions.

The court continued the dependency hearing on two occasions to provide DHS an opportunity to explore whether Father could take custody of Children. Following a January 3, 2020 hearing, the court adjudicated Children dependent, finding DHS established by clear and convincing evidence that Children were "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [their] physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302. Children were reunified with Mother at Mother's treatment program. The court ordered that Father was to have visitation with Children, and referred Father and Children to Behavioral Health Services for consultation and/or evaluation for family therapy. Father was also ordered to verify his employment, and DHS was to inform Father of all medical and education appointments.

Father filed a timely notice of appeal. He raises the following issue:

> 1. Did the trial court commit an error of law and/or abuse of discretion in finding that the [DHS] met its burden of presenting clear and convincing evidence of dependency as to . . . Father?

Father's Br. at 4.

Father argues that DHS did not present clear and convincing evidence that Children would be without proper parental care and control if they were placed with him. Although he had not had contact with Children for several years, he asserts that he "was ready, willing, and able to take on the role of custodial parent when asked if he would do so by [DHS]." Father's Br. at 10. He maintains the court relied on hearsay in determining otherwise and that, even with the hearsay, the evidence was insufficient to support a finding of dependency. *Id.* at 13. He further claims that his prior lack of involvement should not control, stating that "whether proper parental care and control is immediately available does not turn on the historic contact between parent and child." *Id.* at 14. He notes that Child 1 resided with him for eight months after Mother moved to Pennsylvania. He also claims that DHS failed to investigate Father as a potential caretaker.

We review the grant of a dependency petition for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). We "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *Id.* However, we are not bound by the trial court's "inferences or conclusions of law." *Id.*

The Juvenile Act defines a dependent child as a child "without proper parental care or control, subsistence, education as required by law, or other

care or control necessary for [the child's] physical, mental or emotional health, or morals." 42 Pa.C.S.A. § 6302. The "burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets [the] statutory definition of dependency." *In re M.T.*, 101 A.3d 1163, 1173 (Pa.Super. 2014) (*en banc*) (quoting *In re G.T.*, 845 A.2d 870, 872 (Pa.Super. 2004)). Clear and convincing evidence is defined as evidence that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (quoting *In re C.R.S.*, 696 A.2d 840, 843 (Pa.Super. 1997)).

"[A] court cannot adjudge a child to be dependent when his non-custodial parent is ready, willing, and able to provide the child with proper parental care and control[.]" *In the Int. of Justin S.*, 543 A.2d 1192, 1199 (Pa.Super. 1988). In *In the Interest of Justin S.*, we concluded:

> [I]t is the duty of the trial court to determine whether the noncustodial parent is capable and willing to render proper parental care and control prior to adjudicating a child dependent. If the court determines that the custodial parent is unable to provide proper parental care and control "at this moment" and that the non-custodial parent is "immediately available" to provide such care, the child is not dependent under the provisions of the Juvenile Act. Consequently, the court must grant custody of the allegedly dependent child to the non-custodial parent.

*Id.* at 1200.

In *In re B.B.*, 745 A.2d 620 (Pa.Super. 1999), this Court affirmed an order adjudicating children dependent over their father's claim there was no

- 4 -

evidence that he was not "immediately willing and able to provide the children with proper parental care and control." *Id.* at 622. We concluded the court did not err, noting that the father had not been actively involved in the children's lives, and was "virtually [] a stranger" to the children. *Id.* at 623.

Here, the trial court adjudicated Children dependent. It concluded, "DHS met its statutory burden by clear and convincing evidence regarding Children's dependency adjudication pursuant to paragraph (1) of the definition of 'Dependent Child' under 42 Pa.C.S.A. § 6302, and Father is not ready, able, and willing to reunify with Children." 1925(a) Op. at 7. It pointed out that Father had not had contact with, or made attempts to contact, Children in at least four years, and had not contacted authorities despite allegedly having concerns about how Children were living. The court added that Children wanted to live with Mother and that Child 1 wanted to visit with Father, but not live with him. It noted that the court "went out of its way to continue the adjudicatory hearing . . . to further allow Father to be explored, but Father failed to cooperate fully with DHS by providing documentation and verification of housing, payment of child support, employment, and the names and personal information of individuals that live in his home in order to allow DHS to obtain child abuse and criminal clearances." *Id.* at 6.

After review of the briefs and the certified record, we have determined that the opinion of the Common Pleas Court judge, the Honorable Joseph Fernandes, ably and aptly disposes of Father's arguments. We therefore affirm on the basis of Judge Fernandes's opinion. *Id.* at 3-7.

- 5 -

In the argument section of his brief, Father argues an additional issue. He claims that the testimony regarding allegations of abuse constituted inadmissible hearsay evidence. However, he did not raise the issue in his Rule 1925(b) statement. He has therefore waived it for appellate review. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2020

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

| | | |
|---|---|---|
| In the Interest of N.D., a Minor | : | CP-51-DP-0001606-2019 |
| | : | |
| In the Interest of N.D., a Minor | : | CP-51-DP-0001607-2019 |
| | : | |
| | : | FID: 51-FN-001613-2019 |
| | : | |
| APPEAL OF: N.D., Father | : | 450 EDA 2020 |
| | : | 451 EDA 2020 |

**OPINION**[1][2]

**Fernandes, J.:**

Appellant N.D. ("Father") appeals from the trial court's order entered on January 3, 2020, adjudicating N.D. ("Child 1") and N.D. ("Child 2") (collectively "Children") dependent pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6302 "Dependent Child." Father's counsel, Meredith M. Rogers, Esquire, ("Father's Counsel"), filed a timely Notice of Appeal ("Notice") and Statement of Matters Complained of on Appeal pursuant to Rule 1925(b) ("Statement of Errors") on February 2, 2020.

**Factual and Procedural Background:**

This family became involved with the Department of Human Services ("DHS") on October 11, 2019, when DHS received a General Protective Services ("GPS") report alleging that Children's Great Aunt was contacted on October 8, 2019, after Mother[3] was unable to be contacted regarding Child 1's body odor at school, which was getting increasingly worse over time. The report further indicated that Mother appeared at the school, denied any issues in the home, and entered into a physical altercation with Child 1's teacher in the school office; Great Aunt and Maternal Grandmother visited the school and indicated that they were concerned for Children's well-being;

---

[1] The trial court requested the Notes of Testimony for January 3, 2020, on February 5, 2020. The trial court received the Notes of Testimony on February 18, 2020.

[2] On March 17, 2020, the First Judicial District of Pennsylvania ("FJD") closed all FJD courts and related offices due to public health concerns related to COVID-19. On March 19, 2020, the Supreme Court of Pennsylvania issued an order directing that all Pennsylvania courts are generally closed. To date, all Pennsylvania courts remain closed and are not set to reopen until June 1, 2020, at the earliest.

[3] Mother is not involved in this appeal.

Maternal Grandmother resided in Arizona but traveled to Philadelphia on October 8, 2019, due to calls from neighbors regarding the poor condition of the family home where Mother and Children were residing; Mother was struggling with alcohol addiction; Mother refused to bathe herself or Children; Child 1 was functioning well in the classroom both academically and socially; Children were afraid to bathe in fear of upsetting Mother; and when Mother dropped off Child 1 at school on October 10, 2019, Mother appeared intoxicated. This report was validated. (N.T. 01/03/20, pg. 53). On that same day, DHS received a supplement to the GPS report, which alleged that Children were living in a deplorable home; Mother and Children were transient; the home was filthy and smelled of urine; the home had exposed wire hanging from the ceiling in the dining room; the bathroom sink was out of order and the shower was inoperable; there was trash all over the home; Children were unkempt; Child 1 was being bullied at school due to his body odor; Child 2 suffered from epilepsy and there was concern that she was not receiving medical treatment; Mother consumed alcohol all day and in the presence of Children; Children's siblings resided with other relatives; and Mother was unable to care for Children. On that same day, DHS visited the family home of record. When Mother answered the door, DHS observed that Mother was intoxicated. Mother subsequently refused to allow DHS into the home and become aggressive. DHS contacted the Philadelphia Police Department for assistance. DHS determined that the home was in deplorable and unlivable condition. DHS subsequently obtained an Order of Protective Custody ("OPC") for Children. Child 1 was placed with a maternal aunt and Child 2 was placed with a different maternal aunt. DHS conducted an interview of Child 1, who stated that he was bullied at school due to this body odor and dirty clothes.

On October 11, 2019, Father contacted DHS via telephone. Father indicated that he was under the impression that Children were residing in Arizona with Maternal Grandmother. Father stated that he was in Jacksonville, Florida, and that he would travel to Philadelphia. Father did not disclose his address before ending the call.

On October 14, 2019, a shelter care hearing was held for Children. Father was not present for this hearing. The trial court lifted the OPC and the temporary commitment to DHS was ordered to stand. The trial court ordered Father to attend supervised visitation with Children at the agency. On October 21, 2019, DHS filed dependency petitions for Children.

On January 3, 2020 an adjudicatory hearing was held for Children.[4] Father was present for this hearing. After all testimony was given, the trial court found clear and convincing evidence to adjudicate Children dependent with supervision on the finding of present inability. The temporary commit was discharged and Children were reunified with Mother at Mother's treatment program. The trial court ordered Father to attend visitation with Children for three hours, which can occur in the community, and may be modified by agreement of the parties. The trial court referred Father and Children to Behavioral Health Services ("BHS") for consultation and/or evaluation for family therapy, when Father is available by phone or is in town. The trial court ordered Father to provide verification of employment to CUA. DHS/CUA was ordered to assist Father with transportation and lodging, if necessary, for visitation. CUA was ordered to inform Father of all medical, dental, and educational appointments for Children and Father may attend these appointments in person or via telephone. On February 2, 2020, Father's Counsel filed this appeal on behalf of Father.

**Discussion:**

On appeal,[5] Father asserts:

1. The trial court committed an error of law and abuse of discretion when it found Children to be a Dependent Child by clear and convincing evidence as to Father.

Although Father has appealed the finding of Child 1 and Child 2 as a Dependent Child, Father has not appealed the trial court's determination regarding Children's placement with Mother with DHS supervision. This Opinion will only address the matter on appeal and will not address Children's placement with Mother.

Father's first issue on appeal asked whether the trial court erred in adjudicating Children dependent. A "Dependent Child" will be adjudicated dependent if the trial court determines, by clear and convincing evidence, that Child is without proper parental care or control, subsistence, education, as required by law, or other care or control necessary for Child's physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control

---

[4] Adjudicatory hearings were originally scheduled for Children on October 29, 2019, and November 25, 2019. The trial court granted a continuance on both dates for service, further investigation, and to allow the exploration of Father.
[5] Father's Counsel filed two Notices, one for each child. However, the Statement of Errors included with each Notice list the same errors.

may be based upon evidence of conduct by the parent, guardian, or other custodian. Clear and convincing evidence has been defined as testimony by credible witnesses who clearly relate facts that are so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In Interest of J.M.*, 166 A.3d 408, 427 (Pa. Super. 2017) (*citing In Re Novosielski*, 992 A.2d 89, 107 (Pa. 2010)). In order to determine whether a child is lacking the proper parental care and control encompasses two questions: "1) Is the child 'at this moment without proper care or control?; 2) If so, is such care and control 'immediately available?'" *In Interest of Justin S.*, 543 A.2d 1192, 1198 (Pa. Super. 1988). The purpose of the Juvenile Act is to preserve the unity of the family whenever possible. 42 Pa.C.S.A. §6301(b)(1). Nonetheless, a child will be adjudicated dependent when the child is presently without proper parental care and the care is not immediately available. *In re R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991) (*citing In Re LaRue*, 366 A.2d 1271 (Pa. Super. 1976)). Superior Court has defined proper parental care as the care which is geared to the particularized needs of the child and, at a minimum, is likely to prevent serious injury to the child. *In re C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997) (*citing In Interest of Justin S.*, 543 A.2d 1192, 1200 (Pa. Super. 1988)). The burden of proof in a dependency proceeding is on the petitioner. *In re C.R.S.*, *supra* at 842-843.

It was established from the testimony that DHS became involved in this case when DHS received a GPS[6] report alleging substance abuse as to Mother. (N.T. 01/03/20, pg. 11). As part of the investigation, DHS spoke with Father at the courthouse on November 25, 2019. (N.T. 01/03/20, pg. 17). Father currently resides in Jacksonville, Florida. (N.T. 01/03/20, pg. 30). Father indicated to DHS that he had not seen Children for at least four years prior to DHS involvement. (N.T. 01/03/20, pgs. 17-18, 21, 93). Father had not had any contact with Child 2 since Mother left Florida for Philadelphia with Children in approximately 2015. Father had not seen Child 1 since Child 1 briefly returned to Florida to reside with Father for approximately eight months after Mother moved to Philadelphia. (N.T. 01/03/20, pgs. 17, 34, 86, 92, 117). Father also indicated that he had not made any attempts to visit Children since he last saw them in Florida at least four years ago. (N.T. 01/03/20, pgs. 17-18, 21). Father claimed that he didn't attempt to visit Children because he did not know where they were living, although he was aware that Children were living in

---

[6] DHS indicated that the report was a Child Protective Services ("CPS") report, but for the rest of the trial, all parties refer to the report as a GPS report. (N.T. 01/03/20, pgs. 11, 29, 44, 53, 72, 122).

Philadelphia with Mother. (N.T. 01/03/20, pgs. 21, 49). Father admitted that even though he did not hear from Children for years and had concerns about how Children were living, Father did not make any outreach to police or the Philadelphia courts. Father claimed that he once visited a courthouse in Florida to try and obtain custody of Children. (N.T. 01/03/20, pgs. 21, 99-101). When DHS spoke with Father, Father indicated that he is employed and has housing in Florida, although Father has not provided any verification of his employment. Additionally, although Father has provided a copy of his lease to DHS, the two other individuals listed on Father's lease have not received security clearances. (N.T. 01/03/20, pgs. 32, 51, 52, 66, 67). Father claimed that the individuals listed on the lease are a niece and nephew that do not actually reside in the home, but instead visit on occasion because it helped him obtain the apartment. (N.T. 01/03/20, pgs. 94-95). Father claimed that he had documentation verifying his employment and child support payments but failed to bring the documentation to the courtroom from his car. (N.T. 01/03/20, pgs. 102-103). Child 1 was seven-years-old and Child 2 was six-years-old at the time of the adjudicatory hearing. (N.T. 01/03/20, pg. 127). Children indicated to DHS that they want to reside with Mother. Child 1 also indicated that he did not want to reside with Father, although Child 1 does want to visit with Father. (N.T. 01/03/20, pgs. 28, 33-34). Child 1 indicated to DHS that he was fearful of living with Father because the last thing that Child 1 remembers from living with Father was when Father's paramour instructed Father to give Child 1 a "beating" due to a broken ashtray. DHS determined Child 1's statements constituted a safety threat. (N.T. 01/03/20, pgs. 26-28). After the hearing on November 25, 2019, Father and Children attended one supervised visit. DHS indicated that when Children first saw Father, Children did not recognize him. (N.T. 01/03/20, pg. 52). Child 1 later indicated he had "a little" memory of Father. (N.T. 01/03/20, pg. 53). Father claimed that Child 1 was happy to see Father at the visit and asked Father not to leave at the end of the visit. (N.T. 01/03/20, pgs. 107-108). At trial, Child 1's resource parent ("Resource Parent 1") indicated that Father did not visit nor make any outreach to Child 1 since the hearing on November 25, 2019. DHS also indicated that Child 2 stated that she had not had recent contact with Father, although Child 2's resource parent ("Resource Parent 2") stated that Child 2 and Father are in contact daily. (N.T. 01/03/20, pgs. 36-37, 73). Child 2 experiences seizures and takes medication to regulate seizures, which makes Child 2 medically needy. (N.T. 01/03/20, pgs. 44, 46). At the time Child 2 came into DHS care, Child 2 was not medically up-to-date. (N.T. 01/03/20, pg. 42). Resource Parent 2 indicated that Child 2 had a scheduled appointment with a neurologist

regarding her seizures at a Philadelphia hospital in January 2020. (N.T. 01/03/20, pg. 44). Father has not attended any medical appointments for Child 2, although he has been in contact with her doctor. (N.T. 01/03/20, pg. 80). Based on the testimony at the January 3, 2020 adjudicatory hearing, the trial court found clear and convincing evidence to adjudicate Children dependent based on present inability. DHS witnesses were credible. The trial court found that Children lacked proper parental care and control. While Children were in Mother's care, Mother was abusing substances and Father was not involved in Children's lives for several years. (N.T. 01/03/20, pgs. 17-18, 21, 34, 86, 92-93, 117). Father did not return to Children's lives until Children were removed from Mother's care. The record established that Father was aware Children were living with Mother with concerns whether their needs were being met by Mother but made no attempt to contact that authorities. (N.T. 01/03/20, pgs. 17-18, 21, 49). The trial court went out of its way to continue the adjudicatory hearing on October 29, 2019, and November 25, 2019, to further allow Father to be explored, but Father failed to cooperate fully with DHS by providing documentation and verification of housing, payment of child support, employment, and the names and personal information of individuals that live in his home in order to allow DHS to obtain child abuse and criminal clearances from the Florida Children and Youth Agency. (N.T. 01/03/20, pgs. 32, 49-52, 66-68, 102-103). Father has had the opportunity over a period of two months to present himself as a ready, willing, and able parent for Children, but has failed to do so. Father failed to establish that he has a safe and stable home and stable income for Children, and that he can provide for Children's needs, especially the medical needs of Child 2, after failing to participate in Children's lives for the last several years. Children have little memory of Father and did recognize Father at their first and only supervised visit Father availed himself to after Children came into DHS legal custody. (N.T. 01/03/20, pgs. 52-53). Both Children have stated that they want to live with Mother. (N.T. 01/03/20, pg. 28). DHS met their burden and Father failed to establish that he was able to provide Children with the proper parental care and control at this time. The record also established that Father had been abusive to Mother when Mother, in the past, lived with Father in Florida. Due to the domestic violence in the relationship, Mother moved to Pennsylvania. (N.T. 01/03/20, pgs. 29, 111-112, 119). Furthermore, Mother further testified that Father used substances such as marijuana and alcohol in front of her and Children. The trial court found Mother to be credible. (N.T. 01/03/20, pg. 112). Consequently, the trial court found it to be in Children's best interests not to be reunified with Father. It's Father's burden under the current law to show that he is ready,

able, and willing to parent. _In Interest of Justin S._, 543 A.2d 1192, 1200 (Pa. Super. 1988). Therefore, the trial court did not err or abuse its discretion in finding Children dependent.

**Conclusion:**

For the aforementioned reasons, the court properly found that DHS met its statutory burden by clear and convincing evidence regarding Children's dependency adjudication pursuant to paragraph (1) of the definition of "Dependent Child" under 42 Pa.C.S.A. §6302, and Father is not ready, able, and willing to reunify with Children. Accordingly, the order entered by the trial court on January 3, 2020, adjudicating Children dependent should be affirmed.

By the court,

Joseph Fernandes J.

**IN THE COURT OF COMMON PLEAS**
**FOR THE COUNTY OF PHILADELPHIA**
**FAMILY COURT DIVISION**

| | | |
|---|---|---|
| In the Interest of N.D., a Minor | : | CP-51-DP-0001606-2019 |
| | : | |
| In the Interest of N.D., a Minor | : | CP-51-DP-0001607-2019 |
| | : | |
| | : | FID: 51-FN-000145-2019 |
| | : | |
| APPEAL OF: N.D., Father | : | 450 EDA 2020 |
| | : | 451 EDA 2020 |

## CERTIFICATE OF SERVICE

I hereby certify that this court is serving a copy of this duly executed Opinion upon all parties or their counsel on April 23, 2020. The names and addresses of all persons served are as follows:

Courtney McGinn, Esq.
City of Philadelphia Law Department
1515 Arch Street
Philadelphia, Pennsylvania 19102
Attorney for DHS

Meredith M. Rogers, Esq.
5213 Knox Street
Philadelphia, Pennsylvania 19144
Attorney for Father

Adrienne Box, Esq.
Defender Association of Philadelphia
1441 Sansom Street, 9th Floor
Philadelphia, Pennsylvania 19102
Child Advocate

Gary Server, Esq.
52103 Delaire Landing
Philadelphia, Pennsylvania 19114
Attorney for Mother

BY: _____

Ariel J. Bruce
Law Clerk to the Hon. Joseph L. Fernandes
First Judicial District of Pennsylvania
Family Division
1501 Arch St., Room 1431
Philadelphia, Pa. 19102
T: (215) 686-2660 | F: (215) 686-4224