2021 PA Super 35

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B. A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.B. MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1416 EDA 2020 |

Appeal from the Order Entered July 2, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000548-2020

BEFORE: PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.: Filed: March 5, 2021

In this appeal, we are faced with a conflict between the necessity of a finding of dependency to allow the state to interfere in a parent-child relationship, and the necessity of a hearing before a dependency court can durably transfer custody to a non-custodial parent. Here, custody of J.B. was temporarily transferred from his custodial mother ("Mother") to his non-custodial father ("Father") pending an investigation into allegations of abuse at Mother's home. When the dependency hearing was continued due to the unavailability of witnesses, Father requested the dependency proceeding be terminated, as there were no allegations that J.B. was dependent while in Father's custody. Over Mother's objections, the trial court dismissed the dependency petition and entered an order giving Father full physical and legal

_____

[*] Former Justice specially assigned to the Superior Court.

custody of J.B. After careful review, we conclude the court erred in transferring full physical and legal custody to Father before holding a hearing. We therefore vacate and remand.

We review orders in dependency cases by accepting the findings of fact and credibility determinations of the trial court if they are supported by the record. *See In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). We are not, however, required to accept the trial court's inferences or conclusions of law. *See id*. The appellate court must ensure that the record represents a comprehensive inquiry and that the trial court has applied the appropriate legal principles to the record. *See In re L.B.*, 229 A.3d 971, 977 (Pa. Super. 2020). If the question before us is a question of law, such as the one presented by the instant case, the scope of review is plenary. *See In re K.L.S*., 934 A.2d 1244, 1246 (Pa. 2007).

In her first issue, Mother argues that the trial court erred by transferring legal and physical custody of J.B. to Father after discharging the dependency petition and without first holding an evidentiary hearing to determine the validity of the dependency allegations lodged against her. To address this argument, we must determine what procedure the trial court followed before entering the orders dismissing the dependency petition and transferring custody to Father.

On May 19, 2020, the Philadelphia Department of Human Services ("DHS") obtained an Emergency Order of Protective Custody ("OPC") for J.B., and he was placed into general foster care. That same day, Father contacted

DHS concerning J.B. DHS directed Father to attend the shelter care hearing scheduled for J.B. the following day.

At the shelter care hearing on May 20, 2020, the trial court lifted the OPC and ordered the temporary commitment to DHS to stand. The court also directed DHS to assess Father and his home. If Father was a viable placement resource for J.B., the court directed DHS to place J.B. with Father. DHS evaluated Father's home that same day and found it to be appropriate. Father also cleared all necessary background checks. J.B. was placed into the care of Father.

Shortly thereafter, DHS filed a dependency petition pursuant to the Juvenile Act, 42 Pa. C.S.A. § 6301 *et seq.*, seeking to have J.B. declared dependent. At the adjudicatory hearing on July 2, 2020, the parties indicated that they had agreed that the matter would be continued. However, Father requested that the dependency petition involving J.B. be discharged because J.B. was in his care and there were no dependency allegations against Father. **See** N.T., 7/2/20, at 6.

Father argued that J.B. could not be adjudicated dependent because Father, as a parent, was ready, willing and able to provide adequate care for J.B. DHS agreed with Father, stating its position that because J.B. had been placed with Father and there were not any dependency allegations against Father, the dependency petition should be discharged. **See id**. at 7-8, 25. The guardian *ad litem* testified that J.B. had been found to be safe in Father's

home and that he had no objection to the court granting DHS's request to discharge the dependency petition. **See id**. at 7-8, 12-13, 25.

Mother, however, repeatedly objected, arguing that the trial court could not transfer custody of J.B. to Father without first holding a hearing. Mother claimed that, absent a hearing, the court lacked authority to find she was not able to provide proper parental care for J.B. **See id**. at 8, 9, 10, 24, 27-28. Mother cited to our Supreme Court's decision in **In re M.L.**, 757 A.2d 849 (Pa. 2000), and this Court's decision **In the Interest of Justin S.**, 543 A.2d 1192 (Pa. Super. 1988), to support her position that an evidentiary hearing must first be held before the court can transfer custody to a non-custodial parent in dependency proceedings.

Over Mother's objections, and without hearing any evidence, the trial court discharged the dependency petition involving J.B. The court reasoned that J.B. was not a dependent child because Father was ready, willing and able to provide parental care. **See** N.T., 7/2/20, at 26, 29. The court also made clear that it was confirming custody with Father, with liberal visitation for Mother to be arranged by the parties. **See id**. at 40. The order of adjudication and disposition reflected that ruling, ordering that legal and physical custody of J.B. be transferred to Father with liberal visitation for Mother.

Mother filed a timely notice of appeal and subsequently complied with the trial court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. In response, the trial court issued a notice pursuant to Pa.R.A.P. 1925(a) notifying this Court that the trial court's reasons for the

order discharging the dependency petition as to J.B. could be found on the record from the July 2, 2020 hearing. It also stated that it had based its decision on **M.L.** and **Justin S.**

On appeal, Mother notes that this Court has expressed its strong disapproval of using dependency proceedings as a means of transferring custody from one parent to another. She also notes the general rule that the disposition of custody is improper in a dependency proceeding if there has been no finding of dependency. Mother acknowledges, however, that **M.L.** and **Justin S.** allow for the transfer of custody between parents in a dependency proceeding even without an adjudication of dependency. She maintains, though, that this transfer of custody can only occur after a trial court has held an evidentiary hearing and subsequently determined that the custodial parent is unable to properly care for the child. Mother argues that she was entitled to such a hearing before the trial court deprived her of the custody of J.B.

DHS now agrees. DHS concedes that it represented at the July 2, 2020 hearing that no dependency issues remained as to J.B. because of his placement with Father and that it did not object to custody being transferred to Father. It now takes the position, however, that this was improper and agrees with Mother that the trial court should have conducted an evidentiary hearing prior to transferring custody to Father pursuant to **M.L.** and **Justin S.**

Father's argument does not directly address the issue raised by Mother and echoed by DHS, as it is not centered on the transfer of custody. Rather, Father focuses on the disposition of the dependency petition. Father asserts

that although Mother was not available to provide proper parental care to J.B. because the dependency allegations against her had not been resolved, Father was a parent who was ready, willing and able to provide that care to J.B. As such, J.B was not, by statutory definition, a dependent child and the trial court therefore correctly discharged the dependency petition under **M.L.** and **Justin S.** According to Father, "maintaining the DHS petition and supervision of the case would only serve to deprive [F]ather of his right to be free from unwarranted state interference in his relationship with [J.B.]." Father's Brief at 7.

The disparity in the way Mother and Father frame their arguments highlights the tricky intersection between dependency and custody that this case presents. It also exposes the competing interests at stake. Nonetheless, despite their varying arguments, both Mother and Father claim their position is supported by **M.L.** and **Justin S.** Given that the trial court also relied on these two cases to support its order discharging the dependency petition and transferring custody to Father, it is only logical to start our analysis with an in-depth examination of each of the cases.

In **M.L.**, the sole issue addressed by the Court was whether the trial court in that case erred in adjudicating a child dependent when that child's non-custodial parent was ready, willing and able to provide the child with proper parental care and control. **See M.L.**, 757 A.2d at 849, 850. There, the mother had primary physical custody of M.L., and the father had partial custody. The mother contacted the county child welfare agency with

allegations that the father was not appropriately caring for M.L. while she was in his care and later repeatedly alleged that the father was sexually abusing M.L. No evidence of abuse by the father was uncovered, but the county agency became concerned with the mother's continued allegations against the father and filed a dependency petition.

After two evidentiary hearings, which included the testimony of several experts and both parents, the trial court concluded that the mother was unable to provide proper parental care to M.L. and the father was able to provide such care. **See id.** at 850 n.1, 851. The trial court adjudicated M.L. dependent and awarded custody to the father. This Court affirmed.

Although it was the mother who appealed, our Supreme Court granted allowance of appeal to decide whether the trial court had improperly adjudicated M.L. as dependent before awarding custody to the father, who was ready, willing and able to provide parental care. The Court began its analysis by noting that there was a conflict in the way this Court had resolved this issue in two published opinions. According to the Court, **Justin S.** held that a trial court cannot adjudge a child dependent where the non-custodial parent is ready, willing and able to provide parental care while **In re Barclay**, 468 A.2d 778 (Pa. Super. 1983), essentially reached the opposite conclusion.[1]

_____

[1] In **In Re Barclay**, the mother had custody of the child when a dependency petition was filed. Following a hearing, the child was adjudicated dependent, and temporary custody was awarded to the biological but non-custodial father. A disposition hearing in front of a different trial court was later held regarding

In resolving this conflict, the Court first outlined the statutory definition of a dependent child under the Juvenile Act, which includes a child who "is without proper parental care or control." 42 Pa. C.S.A. § 6302(1). The Court then stated that a child simply does not meet this definition if he has a non-custodial parent who can provide appropriate care, quoting the following from *Justin S.*:

> It is the duty of the trial court to determine whether the non-custodial parent is capable and willing to render proper parental control prior to adjudicating a child dependent. If the court determines that the custodial parent is unable to provide proper parental care and control "at this moment" and that the non-custodial parent is "immediately available" to provide such care, the child is not dependent under the provisions of the Juvenile Act. Consequently, the court must grant custody of the allegedly dependent child to the non-custodial parent. Once custody is granted to the non-custodial parent, "the care, protection, and wholesome mental and physical development of the child" can occur in a family environment as the purpose of the Juvenile Act directs. 42 Pa.C.S. § 6301(b).

*M.L.*, 757 A.2d at 851. The Court continued:

> We are in accord with the Superior Court's decision in *Justin S.* The plain language of the statutory definition of a dependent child compels the conclusion that a child is not dependent if the child has a parent who is willing and able to provide proper care to the

---

the proper custodial arrangement for the child, which included testimony from the father and two psychologists. Following that hearing, the trial court awarded custody to the father, with liberal visitation to the mother, and ordered that the child remain under the protective supervision of the county child welfare agency. On appeal, this Court first affirmed the adjudication of dependency, even though the non-custodial parent was clearly available to care for the child. *See id.* at 781. It also affirmed the granting of custody of the child to the father on the basis that the trial court had not erred by finding that was in the best interests of the child. *See id.* at 783.

child. When a court adjudges a child dependent, that court then possesses the authority to place the child in the custody of a relative or public or private agency. Where a non-custodial parent is available and willing to provide care to the child, such power in the hands of the court is an unwarranted intrusion into the family. Only where a child is truly lacking a parent, guardian or legal custodian who can provide adequate care should we allow our courts to exercise such authority. Accordingly, we hold that where a non-custodial parent is ready, willing and able to provide adequate care to a child, a court may not adjudge that child dependent.

*Id.* at 851.

It is clear from this passage that the Court was concerned with the implications of saddling a parent with the state involvement that accompanies an adjudication of dependency when such an intrusion is unwarranted. Therefore, the Court, like this Court in *Justin S.*, held that no such adjudication of dependency could take place when the custodial parent is currently unable to provide proper parental care but the non-custodial parent is immediately available to do so.[2]

_____

[2] Unlike the majority opinion, the dissenting opinion in *M.L.* concentrated primarily on the transfer-of-custody issue. The dissent took the position that *Justin S.* erroneously transferred custody to the non-custodial parent in the absence of a determination of dependency, and that the majority was merely perpetuating this error by authorizing the automatic transfer of custody of M.L. to the father. According to the dissent, a trial court simply does not have the authority to act, including transferring custody to the non-custodial parent, under the Juvenile Act unless it adjudicates the child as dependent. *See M.L.*, 757 A.2d at 855 (dissenting opinion). In response, the majority concluded in a footnote that the trial court had the authority to transfer custody to the father because "a dependency hearing is a form of custody proceeding" and custody courts are given the broad power to fashion resolutions suited to the best interests of the child involved. *M.L.*, 757 A.2d at 851, n.3.

In contrast, while **Justin S.** clearly found that an adjudication of dependency was improper under these circumstances, it did so in the context of resolving whether the trial court in that case had properly altered an existing custody arrangement between a child's parents without first adjudicating the child as dependent. In **Justin S.**, Justin's parents were divorced and Justin lived with his brother, mother and her paramour. The mother had custody of the children and the father visited them on weekends.

The county child welfare agency received a report that the father had physically abused Justin and filed a petition alleging dependency and abuse pursuant to the Juvenile Act and the Child Protective Services Law ("CPSL"), then codified at 11 P.S. § 2201 *et seq*. Following hearings on the matter, the trial court found Justin to be an abused child under the CPSL but was unable to identify who had actually perpetrated that abuse.

The mother then alleged that the father had also previously sexually abused the children, and the guardian *ad litem* filed an emergency protective custody order. The court ordered the county agency to take protective custody of the children, and the guardian *ad litem* filed an amended petition. In the petition, the guardian *ad litem* asserted that the mother had fabricated her allegations of sexual abuse and coerced the children to accuse their father of the sexual abuse and that the father had not physically abused Justin. The court directed the county agency to relinquish custody of the children to the father.

Following a hearing the next day, which included testimony from the court-appointed psychiatrist expressing his concerns about the mother and that he had been told that the perpetrator of the physical abuse against Justin was the mother's paramour, the trial court granted custody to the children's father and scheduled a disposition hearing. The court held the disposition hearing, but still could not identify the perpetrator of the abuse other than narrowing the possible perpetrators down to the mother, the mother's brother or the mother's paramour. The court also specifically found that the father had not physically abused Justin and that the mother had coached the children regarding the sexual abuse allegations. *See Justin S.*, 543 A.2d at 1195. As such, the court made the finding that the mother was unable to provide proper parental care to the children but that the father could provide such care. *See id.* at 1195, 1198.

The court did not adjudicate the children as dependent. It did, however, award custody of the children to the father, with supervised visitation for the mother. The mother appealed, arguing that the court had erred by transferring custody of the children to the father without first determining that they were dependent.

In addressing this issue, this Court acknowledged that it is generally improper to dispose of the custody of a child in a dependency proceeding where there has been no adjudication of dependency. *See id.* at 1197. However, the Court held that no such adjudication of dependency can take

place where there is a non-custodial parent who is ready, willing and able to provide proper parental care and control. *See id.* at 1199.

The Court therefore held that, in a dependency proceeding, a court may grant custody of an allegedly dependent child to that child's non-custodial parent without first declaring the child dependent *as long as sufficient evidence of dependency exists*. *See id.* (emphasis added). In other words, if a dependency petition is filed against the custodial parent and there is sufficient evidence for the court to adjudge the child dependent but for the intervention of the non-custodial parent who is willing and capable of caring for the child, the trial court may properly grant custody to the non-custodial parent in a dependency proceeding.

We do not believe that the Supreme Court in *M.L.* intended to change this essential holding of *Justin S.* As noted, *M.L.* quoted *Justin S.* approvingly. Further, both *M.L.* and *Justin S.* arose in procedural postures that included full dependency hearings.

Here, the trial court transferred physical and legal custody to Father but did so in the absence of any evidence being presented to the court substantiating or dispelling the dependency allegations against Mother. As Mother points out, the most glaring distinction between this case and both *M.L.* and *Justin S.* is that the trial court in those cases held evidentiary hearings and made a finding based on the evidence at those hearings that the custodial parent could not provide proper parental care to the child. Both M.L. and Justin could therefore have been adjudicated dependent, but for the

- 12 -

intervention of the non-custodial parent who was ready, willing and able to provide care for the child.

*Justin S.* made clear, however, that before the trial court can enter an order transferring custody to the non-custodial parent in these circumstances there must have been a finding that sufficient evidence of dependency exists. Implicit in *Justin S.* is the conclusion that this bar can only be met if the court holds an evidentiary hearing on the dependency allegations made against the custodial parent and finds, based on the evidence presented, that there was sufficient evidence to adjudge the child dependent had the non-custodial parent not intervened. *See* Pa.R.J.C.P. 1409 cmt. (citing *Justin S.* for the proposition that a court only has the authority to transfer custody to the child's non-custodial parent without a finding of dependency if sufficient evidence of dependency would have existed but for the availability of the non-custodial parent).

In fact, *Justin S.* essentially used this standard when evaluating the mother's second claim that the trial court lacked sufficient evidence to determine that she was unable to provide proper parental care to Justin. In rejecting the mother's claim, this Court looked to the evidence presented at the disposition hearings and concluded that there was sufficient clear and convincing evidence to sustain the court's finding that the mother had failed to provide proper parental care to Justin. *See Justin S.*, 543 A.2d at 1200-1201. Such a conclusion, of course, is supported by the Juvenile Act, which

requires a finding of dependency to be based on clear and convincing evidence. *See In the Interest of J.M.*, 652 A.2d 877, 880 (Pa. Super. 1995).

We further note that other Superior Court precedent dovetails with our reading of *M.L.* and *Justin S. See In the Interest of A.E.*, 722 A.2d 213 (Pa. Super. 1998).[3] In *A.E.*, this Court looked to *Justin S.* when evaluating a custodial parent's claim that the trial court had erred in transferring custody of A.E. to the non-custodial parent after only a shelter care hearing and without first making a finding that the custodial parent had failed to provide proper parental care. The *A.E.* Court found that, given these circumstances, the case did not fit under what it called the exception created by *Justin S.*, *i.e.* that even when a dependency court does not adjudicate a child as dependent, it can nonetheless transfer custody to a ready, willing and able non-custodial parent as long as sufficient evidence of dependency exists. *See id.* at 216. The *A.E.* Court differentiated *Justin S.* from the case there by noting that the trial court in *Justin S.* found by clear and convincing evidence that the custodial parent could not provide proper parental care after holding full disposition hearings regarding the dependency petition allegations. *See id.* Because this had not occurred in *A.E.*, the Court concluded that the trial court erred by awarding custody of A.E. to the non-custodial parent. *See id.*

---

[3] We acknowledge that *A.E.* pre-dated *M.L.* and therefore can offer no direct guidance on interpreting *M.L.* Importantly, however, we note that *M.L.* did not overrule or otherwise discuss *A.E.*, which had been published over a year prior to the publication of *M.L.*

Like in **A.E.**, the trial court here did not hold an evidentiary hearing and determine, in light of the evidence adduced at the hearing, that there was clear and convincing evidence that Mother was unable to provide proper parental care to J.B. prior to transferring legal and physical custody to Father. Based on **Justin S.** and **A.E.**, we conclude that the court erred by failing to do so.

To be clear, we now explicitly hold that a trial court can only transfer durable legal and physical custody to a ready, willing and able non-custodial parent in a dependency proceeding after the court has held an evidentiary hearing and found, based on that evidence, that the custodial parent is unable to provide proper parental care and control to the child by clear and convincing evidence. Because the trial court did not do so here, we agree with Mother and DHS that the trial court erred by entering an order transferring legal and physical custody to Father.[4]

Given our holding that the court must first hold an evidentiary hearing on the dependency allegations and arrive at a conclusion that Mother is unable to provide proper parental care before transferring custody, we cannot agree with Father's argument that the trial court properly discharged the dependency petition in the first instance. Father essentially argues that

---

[4] Mother offers several alternative arguments in support of her assertion that the trial court erred in transferring legal and physical custody to Father without first holding an evidentiary hearing. In light of our agreement with Mother that the trial court so erred, we need not reach the merits of her alternative arguments.

because he was a parent who was ready, willing and able to provide proper care to J.B., J.B. could never be a dependent child and the trial court therefore correctly discharged the dependency petition pursuant to *M.L.*

It is true that *M.L.* held that a child cannot be adjudged dependent if the child has a ready, willing and able non-custodial parent to provide adequate care for her. That holding, however, does not require the dismissal of a dependency petition where the child is subject to a temporary or emergency placement. In *M.L.*, the trial court had awarded custody to M.L.'s father after a hearing. Therefore, although there was sufficient evidence on the record to find that M.L. was dependent based on the dependency allegations asserted against her custodial parent, the Court held that it was improper to adjudge M.L. dependent because M.L.'s father was available to assume custody. Again, no such evidentiary hearing took place here, and the dependency allegations against Mother remained unexplored and unresolved when the court discharged the dependency petition and transferred custody to Father.

The problems inherent with this disposition in these circumstances became immediately apparent when the court attempted to address Mother's visitation arrangements for J.B. Once Mother recognized that the court was going to transfer custody to Father without holding a hearing on the dependency petition, she asked that the court order visitation for her as part of the custody order. The court indicated that, because the abuse allegations remained open, the visits would need to be supervised. **See** N.T., 7/2/20, at

34, 37. The court inquired whether DHS could supervise the visits, to which DHS responded that it could not in light of the fact that the court was discharging the dependency petition. *See id.* at 35. Father, however, asked that the visits be supervised "just based on the allegations." *See id.* Mother responded that there had been no evidence presented that the visits needed to be supervised. *See id.* at 37. After a discussion off the record, the court, without further explanation, confirmed custody with Father with "Mother to have liberal visits as arranged by the parties." *Id.* at 20.

Although there had been no evidence presented, much less a determination made, regarding whether Mother could or could not provide proper parental care to J.B., this arrangement essentially left visitation to the discretion of Father. At the same time, it also failed to provide any protections to ensure J.B.'s safety given the apparent possibility that unsupervised visits with Mother could occur. There can be little doubt that such an arrangement fell short of carrying out the stated purpose of the Juvenile Act to protect the safety of the children who come under its umbrella. *See* 42 Pa. C.S.A. § 6301(b)(1.1).

We recognize the unusual circumstances of this case. It was, after all, DHS that requested that the dependency petition be discharged, even though no evidentiary hearing had been held on the allegations contained in that petition. J.B.'s guardian *ad litem* agreed. Moreover, again in the absence of any evidentiary hearing, neither DHS nor the guardian *ad litem* objected to the transfer of custody to Father or the visitation order. Of course, DHS has

now changed its position and recognized, as we do, that such an evidentiary hearing should have been held pursuant to **M.L.** and **Justin S.**

We therefore conclude that the trial court erred by discharging the dependency petition and transferring legal and physical custody to Father without first holding an evidentiary hearing. As DHS points out, this does not mean that should the court find that Mother is unable to provide proper parental care to J.B., and Father is ready, willing and able to provide that care, that the court cannot properly transfer custody to Father without adjudging J.B. as dependent. It just means that the court must first hold an evidentiary hearing before making those findings and issuing an order to that effect.

Given the potential that the trial court could ultimately reach the same disposition as it did on July 2, 2020 once it considers the case in accordance with this opinion, DHS argues that it is proper to vacate and remand the trial court's order, rather than reverse and remand it as Mother requests. We agree. **See Tribune-Review Pub. Co. v. Dep't. of Cmty. and Econ. Dev.**, 859 A.2d 1261, 1267-1268 (Pa. 2004) (stating that a reversal of an order directs the lower court to reverse its earlier position whereas a vacation of the order directs the lower court to reconsider the case in accordance with the disposition on appeal).

Accordingly, we now vacate the trial court's order discharging the dependency petition and transferring legal and physical custody to Father and remand for proceedings consistent with this opinion.

Order vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/5/21