J-S28033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1033 EDA 2021 |

Appeal from the Order Entered May 21, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002296-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: T.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1034 EDA 2021 |

Appeal from the Order Entered May 21, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0116129-2008

BEFORE:  BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:　　　**FILED SEPTEMBER 27, 2021**

In these consolidated appeals, L.B. (Mother) seeks review of two orders

of the Court of Common Pleas of Philadelphia County (trial court).  In the first

order, the child, T.H. (age 14), was adjudicated dependent.  In the second

_____

[*] Retired Senior Judge assigned to the Superior Court.

order, the child, J.W. (age 8), was found not dependent and transferred to the custody of the child's father, L.W. Both orders are affirmed.

**I.**

The following facts are taken from the certified record. On December 16, 2020, the Department of Human Services (DHS) received a General Protective Services (GPS) report concerning Mother's inability to care for the two children. The report alleged that Mother had serious substance abuse issues that made it impossible for Mother to provide adequate supervision. It was also alleged that the children were often left alone, and that Mother had become mentally unstable, resulting in visits to the Emergency Room on two consecutive days. She was screened for drugs during both visits and each time tested positive for the controlled substance, phencyclidine (PCP). DHS investigated the allegations and the children were placed under an Order of Protective Custody.

While the investigation was pending, Mother refused to give DHS access to the children or her home. In response, DHS obtained an Order of Protective Custody, and with the assistance of police, DHS staff entered Mother's home to retrieve both children and transfer them to the custody of their maternal grandfather.

The trial court held an adjudicatory on hearing on May 21, 2021. At the hearing, Santa Pratt, a DHS Investigative Social Worker, described her observations. She testified that she had gone to Mother's home to inquire

about the allegations in the GPS report. According to Pratt, Mother admitted during the visit that she had recently used PCP, and it appeared to Pratt that Mother was under the influence of a controlled substance. In fact, Mother admitted to Pratt that she had suffered from substance abuse issues for the past ten years.

Another component of Pratt's investigation concerned Mother's supervision of the children. T.H.'s school records indicated that the child had 17 unexcused absences and 27 tardy appearances in the three months preceding the GPS report. J.W.'s school records could not be obtained.

Finally, Pratt investigated the children's respective fathers, neither of whom is a party in these consolidated appeals. T.H.'s father informed Pratt that he was aware of Mother's substance abuse issues. However, T.H.'s father did not seek custody of his child because he lacked appropriate housing.

Chante Waller, a social worker with the Community Umbrella Agency, also testified at the hearing. She explained that T.H.'s school attendance improved after being placed with the child's maternal grandfather. Waller testified that Mother had entered a drug and alcohol program and made significant progress, as indicated by numerous negative drug screens in the four months preceding the hearing. However, Waller was still concerned about Mother's potential to relapse and opined that Mother needed to continue progressing with her treatment before she would be ready to care for the children on her own.

Waller noted that T.H. wished to return home with Mother. However, given the child's age and Mother's long history of substance abuse, Waller believed that T.H. should return home only upon Mother's completion of her treatment program. Waller recommended that in the meantime, T.H. should remain in her maternal grandfather's care, with Mother receiving supervised visitation.

As to J.W., Waller testified that she was able to contact J.W.'s father, who had previously been granted full custody of J.W. through dependency court in 2015 due to Mother's substance abuse. J.W.'s father explained to Waller that Mother had refused to return the child after a supervised visit. J.W.'s father showed Waller three police reports documenting his failed attempts to pick up J.W. from her grandfather's home. On each of those occasions, Mother prevented him from taking the child.

Waller stated that J.W.'s father has an appropriate home and that he is currently employed. More importantly, Waller testified that J.W.'s father is ready, willing and able to act as parent. J.W.'s father appeared at the hearing and informed the trial court of his desire to take custody of J.W. In response, Mother testified at the hearing that J.W. would not be safe in J.W.'s father's care because he would often be left alone with J.W.'s father's girlfriend, who purportedly abused him.

At the conclusion of the hearing, the trial court adjudicated T.H. dependent pursuant to the Juvenile Act. The trial court found that clear and

convincing evidence established Mother's inability to care for the child, as well as T.H.'s truancy. The trial court ruled that removing T.H. from Mother's care was in the child's best interest, and full custody of the child was granted to DHS. Although T.H.'s father was directed to complete a housing program, he was granted liberal visitation; Mother was granted supervised line-of-sight visitation.

The second child, J.W., was adjudicated not dependent, but the child's father was granted full custody based on the evidence of dependency. Mother was also ordered to submit to continued drug screens, participate in an evaluation and complete parenting classes.

Mother timely appealed the two orders concerning each respective child.[1]

## II.

### A.

With regard to J.W., Mother argues that the trial court erred because the evidence of dependency was insufficient and custody of the child could not

---

[1] Mother and the trial court complied with Pa.R.A.P 1925. The trial court also submitted a 1925(a) opinion outlining its factual findings and legal conclusions. *See* Trial Court Opinion, 6/23/2021, at 6-10. DHS submitted an appellate brief as to both orders. Moreover, the guardian *ad litum* submitted a brief on behalf of the two minor children.

be awarded to the father because Mother's dependency issues were resolved at the time of the adjudicatory hearing.[2]

Under the Juvenile Act, a child may be removed from the custody of a parent if a trial court finds by clear and convincing evidence that the child is "dependent." **See** 42 Pa.C.S. § 6302. However, the trial court may grant custody of a non-dependent child to a non-custodial parent without such a finding if there is "sufficient evidence of dependency." **See In the Interest of J.B.**, 247 A.3d 447, 453 (Pa. Super. 2021) (citing **In the Interest of J.S.**, 543 A.2d 1192, 1199 (Pa. Super. 1988)). Before custody may be transferred in this manner, the trial court must find that the custodial parent is presently unable to provide proper parental care and that the non-custodial parent is "immediately available" to provide such care. **See In re M.L.**, 757 A.2d 849, 851 (Pa. 2000); **In the Interest of J.S.**, 543 A.2d at 1200.

Here, the trial court did not err in restoring custody of J.W. to his father. There was abundant evidence that Mother was unable to care for J.W. at the time of the adjudicatory hearing. It is undisputed that Mother has long suffered from substance abuse issues, as well as mental health issues. In fact, the trial court had already granted custody of the J.W. to his father in 2015 due to those same circumstances. Mother only had custody of the child

---

[2] In dependency cases, the reviewing court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. **See In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010). The trial court's conclusions of law are reviewed *de novo*.

by repeatedly thwarting that court order and preventing J.W.'s father from taking the child to his home. While Mother certainly made strides in dealing with her substance abuse and mental health issues, there was credible evidence that, at the time of the hearing, she was not ready to assume full care and control over the child.

On the other hand, there was credible evidence regarding the ability of J.W.'s father to serve as a parent. It was established that J.W.'s father has an appropriate home and that he is employed. It is also significant that J.W.'s father is both willing and able to resume his parental role. Thus, the evidence was sufficient to justify the transfer of custody despite the finding of non-dependency, and the order must, therefore, stand.

## B.

As to the appeal concerning T.H., Mother contends that there was not clear and convincing evidence to justify an adjudication of dependency, that it was not in the child's best interests to be removed from her custody, and that the circumstances leading to the removal of the child from her care had been resolved by the time of the adjudicatory hearing.

A trial court's determination of a child's dependency is governed by the Juvenile Act. *See In re E.B.*, 83 A.3d 426, 431 (Pa. Super. 2013); 42 Pa.C.S. § 6351(a). When adjudicating a child dependent pursuant to the Juvenile Act, the trial court is required to make the following factual findings:

> (1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances[.]

42 Pa.C.S. § 6351(b). "[T]he child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved." *In re J.J.*, 69 A.3d 724, 732 (Pa. Super. 2013).

The Juvenile Act defines a "dependent child" in pertinent part as a child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;

* * * *

(5) while subject to compulsory school attendance is habitually and without justification truant from school[.]

42 Pa.C.S. § 6302 (enumerating definition of a "dependent child"). An adjudication of dependency under either of these two provisions must be supported by clear and convincing evidence. *See In re G.T.*, 845 A.2d 870, 827 (Pa. Super. 2004).

Here, the record supports the trial court's determination that T.H. lacked proper care and control, and that Mother could not provide her with that care. On December 16, 2020, DHS discovered that Mother had tested positive for PCP on the two consecutive days in which she had been hospitalized. Mother has admitted to a ten-year history of dealing with substance-related issues. There was credible evidence that, as of the time of the adjudicatory hearing a few months after the two hospitalizations, Mother remained unable to provide T.H. with proper parental care and control.

Additionally, the record supports the trial court's determination that T.H. was truant. The Juvenile Act's definition of truancy is met where there is "clear and convincing evidence of three distinct facts, that is, that the child is (1) subject to compulsory school attendance and (2) habitually truant (3) without justification." *In re C.M.T.*, 861 A.2d 348, 353-54 (Pa. Super. 2004).

Children are subject to compulsory school attendance from the age of six to eighteen; a child is considered habitually truant if they miss six or more school days in a single school year and those absences are not justified. *See* 24 P.S. §13-1326. An absence lacks justification if there is "testimony and school attendance records to establish that no excuse was received by the school[.] Upon introduction of such evidence, an inference arises that the absence in question is unjustified, at which point the parent or minor child may proceed to rebut the presumption." *In re C.M.T.*, 861 A.2d at 354.

In the present case, it is undisputed that T.H. was subject to compulsory school attendance because she was 14 years old at the time of the adjudicatory hearing. Nor was it disputed that T.H. had accumulated well over six unexcused absences from school while in Mother's care. She was also routinely tardy, and Mother offered no justification at the hearing for the child's poor attendance record. The presumption of truancy, therefore, applied, *see C.M.T.*, 861 A.2d at 354, and the trial court did not err in adjudicating T.H. dependent on that ground.

The record supports the trial court's finding that removing T.H. from Mother's care was in the child's best interests. *See* Trial Court Opinion, 6/23/2021, at 9-10. The trial court cited Mother's erratic behavior after the GPS order was entered, requiring DHS to remove the children by force. Further, and as Mother admits, she has continued to receive treatment for substance abuse throughout the proceedings. These circumstances show that the removal was necessary for the welfare of the child, despite the reasonable efforts of DHS to eliminate the need for that removal.

Accordingly, for all of the reasons outlined above, the trial court's orders as to both J.W. and T.H. are affirmed.

Orders affirmed.

Judge Bowes joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2021